Frederick J. PAGE, Jr. and Kristin D. Page, Plaintiffs, Appellees,

v.

MOSELEY, HALLGARTEN, ESTA-BROOK & WEEDEN, INC., and Joseph McDonald, Defendants, Appellants.

No. 86–1021.

United States Court of Appeals, First Circuit.

Argued June 3, 1986.

Decided Nov. 26, 1986.

Bruce E. Falby with whom John A.D. Gilmore and Hill & Barlow, Boston, Mass., were on brief for defendants, appellants.

Harry A. Garfield, II with whom Norman Berman and Berman, DeValerio & Pease, Boston, Mass., were on brief for plaintiffs, appellees.

Before CAMPBELL, Chief Judge, COFFIN and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

This action was brought below by plaintiffs-appellees, Frederick J. Page, Jr. and Kristin D. Page, against their former stockbroker Joseph McDonald, and his employer, a Cambridge, Massachusetts stockbrokerage firm known as Moseley, Hallgarten, Estabrook & Weedon, Inc. Plaintiffs' basic claim below was for alleged excessive trading or "churning" of their accounts by defendants. Plaintiffs sought to recover damages pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 (1985). Plaintiffs also alleged that defendants' conduct violated the civil provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964(c). Finally, plaintiffs alleged a violation of Massachusetts General Law Chapter 93A, pertaining to deceptive and unfair trade practices.

After defendants answered the complaint and upon the completion of discovery, defendants moved, on November 30, 1984, to dismiss the RICO and state law counts for failure to state a claim, but requested that the motion not be briefed until trial due to rapid developments of the law in each area. Plaintiffs opposed the motion, but joined in the request that briefing be delayed.

On January 4, 1985, plaintiffs filed a motion for partial summary judgment as to the 10b–5 claim. For reasons that are not apparent from the record, the district court took no immediate action on this motion.

On March 29, 1985, approximately twelve months after plaintiffs filed their complaint and 3½ weeks after the Supreme Court decision in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), defendants moved to compel arbitration. Again, this motion was not acted upon by the court at that time.

On June 17, 1985, the district court denied plaintiffs' motion for partial summary judgment, noting the presence of material issues of fact with respect to the 10b–5 claim. Defendants then moved, on December 16, 1985, to dismiss the state law claim on the ground that the Massachusetts Supreme Court had decided that securities fraud does not suffice to state a claim under Massachusetts General Law ch. 93A. *See Cabot Corp. v. Baddour*, 394 Mass. 720, 477 N.E.2d 399 (1985).

On January 6, 1986, the district court held a hearing to decide all pending motions before it. By stipulation of the parties, the court dismissed the state law claim. As to the motion to compel arbitration on the 10b–5 and RICO counts, the court noted that the law favoring arbitrability is unclear and that, given "the stage at which this case now stands," it would deny defendants' motion. This appeal followed.

On appeal, defendants-appellants urge us to reverse the district court and find that the 10b–5 and RICO claims were arbitrable. Plaintiffs-appellees suggest a contrary result, adding that we need not reach the issue of arbitrability given our alleged lack of appellate jurisdiction and plaintiffs' claim that defendants waived their right to compel arbitration.

For reasons stated more fully below, we hold that appellate jurisdiction exists, that defendants did not waive their right to compel arbitration, that the 10b–5 claim was arbitrable and that the RICO claim was not. Accordingly, the order of the district court is vacated with instructions to compel arbitration on the 10b–5 claim and to stay litigation on the RICO claim pending arbitration on the 10b–5 count.

## I. *Appellate Jurisdiction*

■ Plaintiffs-appellees do not dispute that their action is one for damages, and hence, is legal in nature. Appellees also acknowledge the *"Enelow-Ettelson"* doctrine.[1] This doctrine establishes that if the underlying action is one at law, orders compelling arbitration, 9 U.S.C. § 4, or staying district court proceedings pending arbitration, 9 U.S.C. § 3, are appealable under 28 U.S.C. § 1292(a)(1). *See Mowbray v. Moseley,* 795 F.2d 1111, 1113 (1st Cir.1986); *Langley v. Colonial Leasing Co. of New England,* 707 F.2d 1, 5 (1st Cir.1983); *Hartford Financial Systems v. Florida Software Services, Inc.,* 712 F.2d 724, 726–727 (1st Cir.1983).

Appellees, however, argue that the rule of appealability should be modified where a *denial,* and not a grant, of a motion to compel arbitration is at issue. Appellees further suggest that, even assuming appellate jurisdiction can be found under *Enelow-Ettelson,* the same should be struck down. *See Mowbray, supra,* at 1114 n. 5 (noting that "some courts and commentators have urged abandonment of the ... doctrine.").

■ We reject both of appellees' propositions. The rule of this circuit is clear that the grant *or denial* of § 3 motions to stay district court proceedings pending arbitration and § 4 motions to compel arbitration is appealable where the underlying action is one at law. *Langley, supra.* Since it is undisputed that appellees' action is one at law, appellate jurisdiction clearly exists. The suggestion that we overrule *Enelow-Ettelson* itself addresses powers beyond our domain. *Enelow-Ettelson* was a creation of the Supreme Court, and only that tribunal, or Congress, can overrule it.

## II. *Waiver*

In considering the issue of waiver, it is paramount that we keep in mind the Supreme Court's admonition that, due to the strong federal policy favoring arbitration agreements, any doubt concerning arbitrability "should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

It is in deference to this policy favoring arbitration that courts have stated that "[w]aiver is not to be lightly inferred, and mere delay in seeking [arbitration] without some resultant prejudice to a party cannot carry the day." *Rush v. Oppenheimer & Co.,* 779 F.2d 885 (2d Cir.1985) (citing *Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 (2d Cir.1968)); *see also Hilti, Inc. v. Oldach,* 392 F.2d 368, 371 (1st Cir.1968).

■ Thus, in order for plaintiffs-appellees to prevail on their claim of waiver,

---

1. *See Enelow v. New York Life Insurance Co.,* 293 U.S. 379, 383, 55 S.Ct. 310, 311, 79 L.Ed. 440 (1935); *Ettelson v. Metropolitan Life Insurance Co.,* 317 U.S. 188, 191, 63 S.Ct. 163, 164, 87 L.Ed. 176 (1942).

they must show not only that defendants delayed in seeking arbitration, but also that such delay caused plaintiffs prejudice. For reasons elaborated below, we find that appellees have not shown sufficient prejudice to make out a claim of waiver.[2]

In order properly to understand plaintiffs' claim of prejudice, it is necessary to reiterate the events prior to and after defendants' motion to compel arbitration. Plaintiffs' complaint was filed on March 15, 1984. Discovery was completed on November 7, 1984. On January 4, 1985, plaintiffs filed a motion for partial summary judgment as to the 10b–5 claim. Approximately twelve months after plaintiffs had filed their complaint, and 3½ weeks after the Supreme Court opinion in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the defendants moved to compel arbitration on March 29, 1985. No immediate action was taken on this motion by the district court.

Three months later, and without addressing defendants' still pending motion to compel arbitration, the district court denied plaintiffs' motion for summary judgment on June 13, 1985. Finally, on January 6, 1986, nine months after defendants moved to compel arbitration, the district court held a hearing. At that hearing, plaintiffs' counsel represented that they would be willing to waive a jury trial. The court then denied defendants' motion and told the parties to be prepared to try the case on 72 hours notice.

■ On appeal, plaintiffs claim prejudice from the fact that they were at the stage of complete readiness to try the case, and if made to arbitrate, will be forced to "restart the entire process before a new tribunal." This argument, while compelling if defendants had indeed filed their motion 72 hours before trial, obfuscates the fact that the defendants filed their motion nine months prior, at which point the *only* prejudice incurred by plaintiffs was having to engage in discovery.[3] As to the alleged burden of discovery, plaintiffs have stipulated in their brief that it caused them no prejudice. Accordingly, we hold that, because plaintiffs have neither alleged nor shown any prejudice from the discovery prior to defendants' motion to compel arbitration, defendants cannot at that point be said to have waived their right to compel arbitra-

2. The parties in their briefs address the proper standard of review for an appellate tribunal when faced with a district court finding of waiver. The problem in this case, however, is that the district court never specifically found waiver. At one point, the court stated that "the fact that defendants' motion to compel arbitration comes after the completion of discovery and after being prepared for trial in and of itself, I think, constitutes sufficient prejudice...." However, after defendants' counsel mentioned that such a finding of waiver might be in conflict with this court's opinion in *J & S Construction Co., Inc. v. Travelers Indemnity Co.*, 520 F.2d 809 (1st Cir.1975), the district court stated that it was "not holding waiver as a matter of law" and would deny defendants' motion due to "the unusual factors that are present in this case and the stage at which it now stands...."

Even if we were to construe the district court's concern over the alleged lateness of defendants' motion as a finding of waiver, the court's conclusion was not based on predicate findings of fact. *Compare Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1159 (5th Cir.1986). Accordingly, we opt to review the waiver claim *de novo* as a legal conclusion that follows from the undisputed facts of defendants'

pretrial participation in the litigation. *See Rush v. Oppenheimer, supra,* at 887.

3. We note that plaintiffs have not alleged, and there is no indication in the record, that the nine month delay between defendants' motion to compel arbitration and the district court's ruling was of defendants' making. We therefore reject plaintiffs' assumption that the relevant date to determine waiver was the date of the district court's decision, January 6, 1986, and not the date the motion was filed, March 29, 1985.

Moreover, we note that defendants' March 29, 1985 filing came only three weeks after the Supreme Court decision in *Dean Witter Reynolds, Inc. v. Byrd, supra,* which, in defendants' perception, signalled a change in the law as to the arbitrability of plaintiffs' claims. Thus, because defendants' motion was arguably timely in light of *Byrd,* and because plaintiffs have not otherwise alleged dilatory conduct on defendants' part, we reject any implication that the March 29 motion came late as a purposeful delay tactic. Indeed, if the record allows for any conclusion in this regard, it is that defendants' motion was a good faith pleading due to a legitimate perception of changes in the law, and we therefore treat it as such.

tion. *See J & S Construction Co., Inc. v. Travelers Indemnity Co.*, 520 F.2d 809 (1st Cir.1975) (no showing of prejudice by plaintiffs, and hence, no waiver by defendants, despite 13 month delay in seeking arbitration and participation in discovery).

## III. *Arbitrability of Claims Under Section 10(b) of the Securities Exchange Act of 1934*

This issue currently divides the circuits. The Second, Third, Fifth, Sixth, Seventh, Ninth, Tenth and Eleventh Circuits have adopted a rule of nonarbitrability.[4] The Eighth Circuit, standing alone, has recently ruled that, where the parties agree, arbitration can be allowed.[5] We are persuaded by the result reached by the Eighth Circuit, although for somewhat different reasons, and rule that, where private parties agree to arbitrate a 10b–5 dispute, this agreement is legally enforceable.

■ The Supreme Court, in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), set out the standard by which lower courts are to assess the arbitrability of federal statutory claims. First, it is imperative that the agreement to arbitrate be a valid one, and it is our role to "... remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or over-whelming economic power that would provide grounds 'for the revocation of any contract.'" *Id.* 105 S.Ct. at 3354 (citing 9 U.S.C. § 2; *Southland Corp. v. Keating*, 465 U.S. 1, 16, n. 11, 104 S.Ct. 852, 861, n. 11, 79 L.Ed.2d 1 (1984); *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972)). We therefore conclude that, because there has been no challenge to the agreement *qua* agreement in this case, *Mitsubishi* requires us to give it credence, and forbids indulgent presumptions as to systemic overreaching in the investor-broker context. *Id.* 105 S.Ct. at 3357.[6]

Given the existence of a valid agreement to arbitrate, and even where a federal statutory right is involved, the Supreme Court has made clear that it is our obligation to enforce the agreement *unless we find that the Congressional intent in enacting the statute was to preclude the waiver of judicial remedies.* *Mitsubishi, supra*, at 3355. The dilemma before us, therefore, is whether Congress, in enacting the Securities Exchange Act of 1934 ("1934 Act"), intended to preclude parties from agreeing to arbitrate disputes involving Rule 10b–5.

In *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Supreme Court ruled that, despite the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*, pri-

---

**4.** *McMahon v. Shearson/American Express, Inc.*, 788 F.2d 94 (2d Cir.1986), *cert. granted,* —— U.S. ——, 107 S.Ct. 60, 93 L.Ed.2d 20 (1986); *Jacobson, et al. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., et al.*, 797 F.2d 1197 (3d Cir.1986); *Bustamante v. Rotan Mosle, Inc.*, 802 F.2d 815 (5th Cir.1986); *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017 (6th Cir.1979); *Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 558 F.2d 831 (7th Cir.1977); *Conover v. Dean Witter Reynolds, Inc., et al.*, 794 F.2d 520 (9th Cir.1986); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Moore*, 590 F.2d 823 (10th Cir. 1978); *Wolfe v. E.F. Hutton & Co., Inc.*, 800 F.2d 1032 (11th Cir.1986) (en banc).

**5.** *Phillips v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 795 F.2d 1393 (8th Cir.1986).

**6.** We note that the Supreme Court in *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) stated that "[w]hile a buyer and seller of securities, under some circumstances, may deal at an arm's length on equal terms, it is clear that the Securities Act was drafted with an eye to the disadvantages under which buyers labor." *Id.* at 435, 74 S.Ct. at 186. Despite this general statement by the *Wilko* Court that *certain* investors may operate at a disadvantage *vis à vis* their more sophisticated brokers, we do not believe that it requires the invalidation of *all* customer-broker arbitration agreements *ab initio*, especially given the Court's admonition in *Mitsubishi* that claims such as overreaching are to be addressed on a case-by-case basis. *Id.* 105 S.Ct. at 3357; *see also Wilko, supra* 346 U.S. at 440, 74 S.Ct. at 189 (Frankfurter, J. dissenting) ("We have not a case before us in which the record shows that the plaintiff in opening an account had no choice but to accept the arbitration stipulation, thereby making the stipulation an unconscionable and unenforceable provision in a business transaction.").

vate parties cannot agree to arbitrate disputes arising under § 12(2) of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. § 77l(2) (1982). The Court offered two central justifications for this holding. First, it noted that, in § 22(a) of the 1933 Act, Congress provided individuals an express right of action in federal and state courts, and that therefore, such an express right of action amounted to a "provision" of the Act that, under § 14,[7] could not be waived. *Id.* at 434–435, 74 S.Ct. at 186. Second, the Court concluded that Congress regarded the determination of rights under the 1933 Act as an area of vital federal concern that could only be entrusted to the federal courts, the express assumption being that arbitration provides an ineffective forum for the vindication of federal statutory rights. *Id.* at 435–437, 74 S.Ct. at 186–188.

■ In determining whether the *Wilko* rule of nonarbitrability should be extended to claims under the 1934 Act, courts have focused on both prongs of the *Wilko* analysis. Examination of the first prong—i.e., whether the right to a judicial forum can be regarded as a nonwaivable "provision" of the 1934 Act subject to its similar anti-waiver clause [8]—leads us to conclude that arbitration cannot be barred. As Justice White noted in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 1244, 84 L.Ed.2d 158 (1985), and as five members of the court observed in *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 513–514, 94 S.Ct. 2449, 2454, 41 L.Ed.2d 270 (1974), the 1934 Act, unlike the 1933 Act, does not *expressly* provide individuals a right to a judicial forum.[9] Because of the absence of any express "provision" for a judicial forum under the 1934 Act, we conclude that the 1934 Act's anti-waiver clause, by itself, does not suffice to indicate a Congressional intent to preclude arbitration.

We now address what we regard as the second prong of *Wilko, supra.* The issue here is whether, due to the legislative history or any other provision of the Securities Act of 1934, we can infer that Congress regarded the securities laws as an area of critical federal import such that the adjudication of such federal statutory rights can only be entrusted to the federal judiciary. For reasons stated more fully below, we reject both the conclusion that Congress' unmistakable intent was to preclude arbitration of 1934 Act claims, as well as the predicate assumption that, with respect to this particular federal statute, arbitration does not provide an effective forum for the resolution of disputes.

As to the Congressional intent to preclude arbitration of 1934 Act claims, we cannot deny two central facts. First, Congress expressly provided in the 1934 Act that the jurisdiction of the federal courts is exclusive, thus arguably allowing for the inference that Congress regarded the federal court forum to be an important one. *See Conover v. Dean Witter Reynolds, Inc.*, 794 F.2d 520, 527 (9th Cir.1986). Second, and more importantly, we do not dispute that Congress, in enacting both the 1933 and 1934 Acts, regarded the legislation as establishing significant federal rights in an area of undisputed federal importance. *See, e.g., Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194–196, 96 S.Ct. 1375, 1381–1382, 47 L.Ed.2d 668 (1976).[10]

---

**7.** Section 14 of the Securities Act of 1933, 15 U.S.C. § 77n (1982) provides:

"Any condition, stipulation or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void."

**8.** Section 29(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78cc(a) (1982), provides:

"Any condition, stipulation or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void."

**9.** Instead, this right has been judicially implied. *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 380 & nn.9–10, 103 S.Ct. 683, 686 & nn. 9–10, 74 L.Ed.2d 548 (1983).

**10.** A third argument noted by the circuits is that Congress, in a 1975 amendment to the 1934 Act, seemed to indicate an understanding that 10b–5 claims were nonarbitrable. *See Conover, supra,* 794 F.2d at 524. Putting aside the question of what weight to give the detail of a committee

Given the above realities, as well as our general knowledge of the financial world, we do not believe it reasonable to conclude that the securities laws of this nation are not a matter of federal importance. Neither, however, do we believe it proper after *Mitsubishi* to hold that the United States Arbitration Act, and the sophisticated commercial arbitration structure which has evolved therefrom, are of any less significance. A balance therefore must be struck, keeping in mind what we consider are certain "maxims" propounded by *Mitsubishi.*

First, the *Mitsubishi* Court made clear that the presence of a federal statutory right cannot, without more, prevent private parties from agreeing to arbitrate. *Id.* 105 S.Ct. at 3354–3355. Thus, it is not enough to find that a federal statute covers an area of federal import. All federal statutes do this, and *Mitsubishi* teaches that the Arbitration Act, itself a federal statute, deserves at least equal deference. *Id.* at 3354.

The second axiom set forth in *Mitsubishi* is that, in determining whether federal statutory rights are to be arbitrable, we are not to be influenced by concerns of the alleged inferiority of the arbitral forum in deciding the content of "complex" federal statutory rights. *Id.* at 3354, 3357–3358. Thus, we reject the proposition that, after *Mitsubishi*, courts can consider the alleged ineffectiveness of the arbitral forum in de-

ciding the arbitrability of a federal statutory right.[11]

The third axiom that we find in *Mitsubishi* may perhaps serve to distinguish *Wilko* as well as the *Alexander v. Gardner-Denver* line of cases. The notion, simply, is that we will not preclude parties from arbitrating disputes involving federal statutory rights unless we find that Congress, either implicitly or explicitly, intended otherwise. Thus, to distinguish *Wilko*, we rely on the failure of Congress to provide for an express right of action in the 1934 Act. Had Congress regarded an exclusive federal court forum as so critical, it would have been simple for Congress to provide, as it did in the 1933 Act, that individuals be able to bring a cause of action in that forum. To distinguish the *Alexander v. Gardner-Denver* line of cases, we note the express private right of action contained in the federal statutes at issue there, and that, at least with respect to *Alexander* and *McDonald,* the federal statute at issue involved adjudication of the rights of an individual under the Constitution, an inquiry that, with all due respect to arbitration, has historically been the sole province of Article III adjudication. Thus, we regard the central question before us as whether, given the failure of Congress to provide individuals an express right of action under the 1934 Act, it is possible to conclude that the securities laws implicate rights more akin to those present in *Alexander, Barrentine,* and *McDonald,* or whether the rights at

report like this, *see, e.g., Hirschey v. FERC,* 777 F.2d 1, 7–8 (D.C.Cir.1985) (Scalia, J., concurring), we agree with the Eighth Circuit that this statement does not provide a compelling indication of Congressional intent, to endorse the rule and policies in *Wilko, see Phillips, supra,* 795 F.2d at 1398 n. 17. Congress might simply have been indicating that it would accept, and not seek to alter, whatever rule the courts chose. We add that the statement appears only reflective of the pre-*Mitsubishi* circuit court opinions extending, under what we regard as erroneous premises, the *Wilko* rule of nonarbitrability to claims arising under Rule 10b–5.

**11.** We do not have before us the issue of the preclusive effect to be given a prior arbitration of a federal statutory right. We note, however, that the Supreme Court, in deciding the preclu-

sive effect to be given such arbitration, has taken note of the arbitral forum's "effectiveness" in vindicating the federal statutory right at issue. *See Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 56–58, 94 S.Ct. 1011, 1023–1024, 39 L.Ed.2d 147 (1974) (right to sue under Title VII of the Civil Rights Act of 1964 not precluded by prior arbitral decision); *Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728, 743–745, 101 S.Ct. 1437, 1446–1447, 67 L.Ed.2d 641 (1981) (right to sue under Fair Labor Standards Act not precluded by prior arbitration of employee's minimum wage claims); *McDonald v. City of West Branch,* 466 U.S. 284, 292, 104 S.Ct. 1799, 1804, 80 L.Ed.2d 302 (1984) (city employee's cause of action under 42 U.S.C. § 1983 not precluded by prior arbitration based on same facts).

issue more closely approximate the sort of commercial dispute that, absent a clear indication from Congress to the contrary, we would readily approve as arbitrable. We conclude that disputes involving Rule 10b–5 of the 1934 Act more closely approximate the latter, that a Congressional intent to preclude arbitration of claims arising under the 1934 Act cannot otherwise be readily found, and that therefore, appellants' motion to compel arbitration was improperly denied.

## IV. Arbitrability of Claims Under the RICO Statute

◼ Having stated that we can find no Congressional intent to preclude arbitration of claims under Rule 10b–5, we now explain why, as to claims arising under the RICO statute, we reach a contrary result.

Our reasons for not allowing arbitration of RICO claims are two. First, unlike 10b–5 actions under the 1934 Act, Congress provided civil RICO plaintiffs an express private right of action. 18 U.S.C. § 1964(c). Second, while many civil RICO claims can perhaps be characterized as "glorified" common law fraud allegations, we cannot overlook the clear legislative history of that statute to the effect that when Congress enacted the RICO provisions, it did so with a view toward the eradication of organized crime. See United States v. Turkette, 452 U.S. 576, 589, 101 S.Ct. 2524, 2531, 69 L.Ed.2d 246 (1981). A civil RICO judgment against a defendant effectively amounts to an accusation that the defendant participated in a "pattern of racketeering activity." See 18 U.S.C. §§ 1962, 1961(1). A civil RICO suit is in effect quasi-criminal in nature.[12] Thus, in light of the arguable parallels between criminal and civil RICO proceedings, and given the Congressional policy of eradicating organized crime through the express use of a private right of action, we believe the Congressional intent to have been one of precluding arbitration and limiting determinations of liability under this statute to the sole province of Article III courts.

◼ We note that two circuit courts have addressed the issue of the arbitrability of civil RICO claims, and, in one case, wish to distinguish their reasoning from our own. The Third Circuit, in Jacobson, et al. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., et al., 797 F.2d 1197 (3d Cir.1986), held that where a civil RICO claim is based on predicate act 10b–5 violations, the RICO claim is arbitrable if the underlying 10b–5 claims are arbitrable. Id. at 1202–1203. Because the Third Circuit found 10b–5 claims not arbitrable, it likewise found RICO not arbitrable. Id. If we were to apply the Third Circuit's reasoning to this case, we would be obliged to find the RICO claim arbitrable along with 10b–5. We have, of course, rejected that view.

We decline to adopt the Third Circuit's reasoning on the ground that a civil RICO violation is made up of more than the predicate act. Specifically, plaintiffs must show that the series of predicate acts amounted to a "pattern of racketeering activity." 18 U.S.C. §§ 1962 and 1964(c). The meaning of this additional element of a civil RICO claim has yet to be clearly established in the law. See Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). We note, however, that the obligation of plaintiffs to establish the existence of a "pattern of racketeering activity" is not meaningless, id., and that it is precisely this element of a RICO claim that carries with it the compelling public policy considerations which were so important to Congress, and which,

---

12. The Supreme Court in Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) stated that "... to the extent an action under § 1964(c) might be considered quasi-criminal, requiring protections normally applicable only to criminal proceedings, [citation omitted], the solution is to provide those protections...." Id. 105 S.Ct. at 3283. While the Court did not by this statement decide whether RICO proceedings are quasi-criminal, we believe it acknowledged such a risk. More importantly, we note that, if the agreed-upon premise is one of a quasi-criminal proceeding necessitating certain implied procedural protections, the extent and nature of such protections would appear to be a constitutional question solely for the province of Article III courts, and not arbitrators, to decide.

in our view, preclude arbitrability. Accordingly, while we can find no Congressional intent precluding arbitration of 10b–5 claims (either alone or where these are alleged as the predicate acts for a civil RICO violation), we must conclude that Congress intended the "pattern of racketeering activity" aspect of RICO to be the sole province of Article III courts. That the result under our rule is bifurcated litigation cannot affect our conclusion. *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 1241–1243, 84 L.Ed.2d 158 (1985) (holding that considerations of efficiency cannot override the command of the Arbitration Act, even where bifurcated proceedings would result).

The Second Circuit, in *McMahon v. Shearson/American Express, Inc.,* 788 F.2d 94 (2d Cir.1986), *cert. granted,* —— U.S. ——, 107 S.Ct. 60, 93 L.Ed.2d 20 (1986), held that civil RICO claims are not arbitrable. The court there stated, *inter alia,* that a civil RICO plaintiff can be analogized to the private antitrust plaintiff, whose claims are not arbitrable under the doctrine of *American Safety Equipment v. J.P. Maguire,* 391 F.2d 821 (2d Cir.1968). The *American Safety* court stated as follows:

"A claim under the antitrust laws is not merely a private matter. The Sherman Act is designed to promote the national interest in a competitive economy; thus, the plaintiff asserting his rights under the Act has been likened to a private attorney-general who protects the public interest." *Id.* at 826.

We agree with the Second Circuit that this element of the *American Safety* doctrine remains alive after *Mitsubishi,* which only criticized the private attorney general concept in the context of an international dispute.[13] 105 S.Ct. at 3355, 3358–3360. Thus, we note that, as in *Wilko, Alexander, Barrentine* and *McDonald,* the provision by Congress to individuals of an express right of action is not to be taken lightly by the courts, and when combined with compelling public policy considerations requiring Article III determination of rights under a statute, can serve to bar arbitration altogether, *see Wilko, supra; American Safety, supra;* or render it clearly secondary by allowing plaintiffs to litigate in federal court anew. *See Alexander, supra; Barrentine, supra;* and *McDonald, supra.*

That we find a compelling Congressional policy to preclude arbitration of civil RICO claims, and not to preclude arbitration of 10b–5 claims, is not in our view contradictory. As noted above, Congress failed to provide individuals an express right of action in the Securities Exchange Act of 1934. This omission, we believe, places a greater burden on those arguing for a compelling area of public concern such that

13. A panel of the Fifth Circuit has recently concluded that *Mitsubishi* overrules *American Safety* in the domestic context, and hence, ends the utility of analogies to the latter case in deciding the arbitrability of RICO claims. *Mayaja, Inc. v. Bodkin,* 803 F.2d 157 (5th Cir.1986). While the proper interpretation of *Mitsubishi's* impact on the arbitrability of RICO claims will soon be decided by the Supreme Court, *see McMahon, supra,* we reject the Fifth Circuit's analysis on two grounds. First, we believe the Fifth Circuit ignored its own warning that parties who too eagerly set out to find an *express* Congressional intent barring arbitration will return with empty hands. *Mitsubishi,* in our estimation, allows for judicial inferences of an *implied* Congressional intent to bar arbitration, especially in light of express rights of action and in the context of a proceeding that involves adjudication of conduct subject to criminal as well as civil sanctions. *See* 18 U.S.C. §§ 1961(1), 1962,

1964(c). Second, we note that it is precisely our concern over the quasi-criminal nature of civil RICO proceedings (and hence, the need for exclusive Article III elaboration of standards of liability and procedural protections) that distinghishes our analysis from that of the Second Circuit in *McMahon, supra.* The Fifth Circuit's apparent solution to the problem—i.e., determining whether the particular action *sub judice* involves arguably criminal or organized crime activity—is in our view unsatisfactory. The makings of a "pattern of racketeering activity" are not yet clear, but the fact remains that a "pattern" for civil purposes is a "pattern" for criminal purposes. 18 U.S.C. §§ 1961(1), 1962, 1964(c). This overlap, in our view, compels the inference that Congress intended only the courts, and not arbitrators, to decide the myraid of issues that will arise in determining the bounds of liability under the civil RICO statute.

arbitration of federal statutory rights is prohibited. The inquiry, under *Mitsubishi*, is one of Congressional intent. And while we do not foreclose the possibility of finding a Congressional intent to preclude arbitration of federal statutory rights where no express right of action is provided, we do not believe actions under the 1934 Act present such a compelling case, and therefore, conclude that their arbitrability cannot be barred on mere inferences. The RICO statute, by contrast, contains express rights of action and, in our view, perilously overlaps with its criminal counterpart so as to render determinations of liability a matter of exclusive Article III concern. We therefore affirm the decision of the district court to deny arbitration of plaintiffs' RICO claim, and reverse the district court's denial of arbitration on the 10b–5 count.

*The case is remanded with instructions that the district court order arbitration of the 10b–5 dispute and stay the RICO claims pending the outcome of the arbitration.* No costs.