**Greg GOLDSMITH, Craig Anderson, Metropolis Trading Co., Timothy Werner and Lakota Trading, Inc., Plaintiffs,**

v.

**Emanuel PINEZ and Lehman Brothers Inc., Defendants.**

**No. CIV. A. 98–10242–PBS.**

United States District Court, D. Massachusetts.

Feb. 28, 2000.

Vincent M. Amoroso, Robert A. McCall, Peabody & Arnold LLP, Boston, Sarah R. Wolff, Sachnoff & Weaver, Marie R. Quinn, Sachnoff & Weaver, Ltd., Chicago, IL, for Greg Goldsmith, Craig Anderson, Metropolis Trading Company, Timothy Werner, Lakota Trading Inc., Plaintiffs.

John D. Donovan, Jr., Mark Szpak, Crystal D. Talley, Ropes & Gray, Boston, for Emanuel Pinez, Lehman Brothers Inc., Defendants.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### INTRODUCTION

This case arises from a now-familiar set of facts involving alleged insider trading, the relationship between the two defendants, Lehman Brothers, Inc. ("Lehman") and Emanuel Pinez, the former C.E.O. of Centennial Technologies, Inc, ("Centennial") and a set of options trades entered into between the plaintiffs and Lehman just before Centennial's stock dropped dramatically. The plaintiffs, who are "market makers" at the Chicago Board of Options Exchange ("CBOE"), lost nearly $3.7 million as a result of options trades executed by Lehman, on behalf of Mr. Pinez, in February of 1997. They allege that Lehman violated federal securities laws, as well as Illinois state law, in mak-

ing these trades.[1] Specifically, the market makers allege that Lehman made representations containing materially false and misleading information, and omitted to state material facts necessary to render such statements true at the time they were made. They further claim that Lehman's representations that it was trading on behalf of a customer were fraudulent and deceptive.

Lehman has moved to dismiss the complaint, asserting: 1) that plaintiffs' allegations fail to meet the heightened pleadings standards to establish scienter under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4; 2) that plaintiffs are attempting to impose primary liability on a secondary actor, contrary to the rule of *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994); and 3) that plaintiffs' misrepresentation claim stemming from Lehman's assertions during trading that it was a customer should fail because the statements were entirely true and did not need to be supplemented. Plaintiffs have filed a motion to stay these proceedings to pursue a private arbitration claim before the CBOE. Lehman opposes the motion to stay, asserting that plaintiffs waived their right to arbitrate by filing in this Court in the first instance and by taking other actions that Lehman alleges are inconsistent with an intent to arbitrate.

Despite all that has now transpired involving these plaintiffs and Lehman, Lehman has not made a showing that it would be prejudiced by a stay in this matter. I therefore *ALLOW* plaintiffs' motion to stay these proceedings pending arbitration.

## BACKGROUND FACTS

The complaint essentially tracks the factual summaries provided in the two previous decisions rendered in litigation brought by the SEC against Mr. Pinez and Lehman. *See SEC v. Pinez*, 989 F.Supp. 325 (D.Mass.1997), *remanded by SEC v. Lehman Brothers, Inc.*, 157 F.3d 2 (1st Cir.1998). I incorporate those factual summaries here.

## PROCEDURAL HISTORY

The legal fallout from the final days of Mr. Pinez's reign over Centennial has been substantial, and provides relevant context for consideration of the present dispute. On February 14, 1997, the SEC filed a civil action against Mr. Pinez, charging that he secured the options trades at issue though the use of insider knowledge about Centennial's true financial health. On March 14, 1997, the SEC added Lehman as a relief defendant, since the proceeds from the options trades remained in Mr. Pinez's margin account at Lehman. Plaintiffs participated in the SEC action as interested parties, filing notices of appearance, attending hearings, filing amicus briefs in March and September of 1997, and filing a memorandum in support of continuing the freeze order in September of 1997. On December 16, 1997, this Court issued a preliminary injunction, freezing the assets in the Lehman account. *See Pinez*, 989 F.Supp. at 345.

On February 6, 1998, the plaintiffs filed this action against Mr. Pinez and Lehman.[2] On March 31, 1998, after a status conference and upon agreement of the parties, this Court issued an order staying these proceedings. The purpose of that stay was to await the resolution of the SEC's action against Mr. Pinez and Lehman. If the SEC had been successful in its action

---

**1.** Count II of the complaint alleges that Lehman violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated by the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b–5. Count IV alleges that Lehman violated the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/1 *et seq.*

**2.** They filed it days before the statute of limitations on the claim of violation of Section 10(b) arguably would have expired.

against Lehman, that could have obviated plaintiffs' need to pursue this private action.

But that case did not prove successful. On October 5, 1998, the First Circuit remanded the preliminary injunction matter to this Court due to its interpretation of governing New York law. *See Lehman,* 157 F.3d at 9. Specifically, the court found that Lehman Brothers' conduct did not amount to subjective bad faith which would negate its status as a bona fide purchaser under New York law. *See id.* at 7. The court went on to find that the SEC had not shown that Lehman had "deliberately closed its eyes" to Pinez's misconduct, and that, from the perspective of Lehman, "misconduct was merely a possibility." *Id.* At a status conference on January 27, 1999, the SEC indicated that it would not likely continue its action against Lehman. The stay in this matter was also lifted at that time. On June 10, 1999, Lehman was formally dismissed as a defendant in the SEC action.

With the stay lifted, Lehman answered plaintiffs' complaint, and filed its motion to dismiss, on February 17, 1999. Plaintiffs filed, and Lehman assented to, a motion to extend time to respond to the motion to dismiss. Plaintiffs' response was due on March 23, 1999; on that date, plaintiffs filed their motion to stay, or, in the alternative, to extend time to respond to the motion to dismiss. They also filed a timely request to arbitrate and a statement of claim before the CBOE, which alleges violations of state and federal law as well as CBOE rules. Prior to that time, plaintiffs had not indicated that they would seek arbitration. This Court ordered plaintiffs to file a response to the motion to dismiss, and heard oral argument on all pending motions on August 3, 1999. There have been no pretrial proceedings other than the status conference in which the case was stayed, and no discovery in this case.

## DISCUSSION

Plaintiffs seek a stay pursuant to Section 3 of the Federal Arbitration Act ("FAA")[3] so that they may pursue arbitration of their claims before the CBOE.[4] Lehman argues that by filing this action, and by participating actively in the SEC action, plaintiffs have waived their right to arbitrate. Because I conclude that the First Circuit requires that a party opposing a motion to compel arbitration must show prejudice, *see Navieros Inter–Americanos v. M/V Vasilia Express,* 120 F.3d 304, 316 (1st Cir.1997), Lehman's argument fails.

In considering whether a party has waived its arbitration right,[5] courts are consistently mindful of the strong federal policy favoring arbitration. The Supreme Court has emphasized that any doubt concerning arbitrability "should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Waiver is not to be lightly inferred. *See Page v. Moseley, Hallgarten, Estabrook & Wee-*

---

**3.** The Federal Arbitration Act, 9 U.S.C. § 3, states as follows:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending ... shall on application of one of the parties stay the trial of the action ... providing the applicant for the stay is not in default in proceeding with such arbitration.

**4.** Under CBOE rules, a dispute between members "which arises out of the Exchange business of such parties shall, at the request of any such party and the approval of the Exchange's Director of Arbitration, be submitted to arbitration in accordance with these rules." CBOE Rule 18.1(a), ¶ 2511.

**5.** Although the FAA speaks in terms of a party being in "default," courts have construed this term as analogous to "waiver." *See In Matter of Complaint of Ballard Shipping Co.,* 752 F.Supp. 546, 548 n. 2 (D.R.I.1990).

*den, Inc.*, 806 F.2d 291, 293 (1st Cir.1986) (citing *Rush v. Oppenheimer & Co.*, 779 F.2d 885 (2d Cir.1985)), *overruled on other grounds sub nom. Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). Nonetheless, courts have consistently held that a party may implicitly waive its right to arbitrate by engaging in litigation. *See, e.g., Navieros Inter-Americanos*, 120 F.3d at 316; *Caribbean Ins. Servs., Inc. v. American Bankers Life Assurance Co.*, 715 F.2d 17, 19 (1st Cir.1983).

■ The First Circuit has laid out a set a factors for courts to consider in determining whether a party, by conduct in court, has waived arbitration rights:

> In determining whether a party to an arbitration agreement, usually a defendant, has waived its arbitration right, federal courts typically have looked to whether the party has actually participated in the lawsuit or has taken other action inconsistent with his right, . . . whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated by the defendant to the plaintiff, . . . whether there has been a long delay in seeking the stay or whether the enforcement of arbitration was brought up when trial was near at hand . . . Other relevant factors are whether the defendants have invoked the jurisdiction of the court by filing a counterclaim without asking for a stay of the proceedings, . . . whether important intervening steps (e.g. taking advantage of judicial discovery procedures not available in arbitration . . . ) had taken place . . . and whether the other party was affected, misled, or prejudiced by the delay . . . .

*Jones Motor Co., Inc. v. Chauffeurs, Teamsters, and Helpers Local Union No. 633*, 671 F.2d 38, 44 (1st Cir.1982) (Breyer, J.) (quoting *Reid Burton Constr., Inc. v. Carpenters Dist. Council*, 614 F.2d 698, 702 (10th Cir.1980)).

Under the *Jones Motor* criteria, the most powerful factor pointing towards waiver is that the plaintiffs themselves filed this claim; they not only "participated" in the lawsuit, they initiated it, and in doing so most certainly invoked the jurisdiction of this Court. This is a relevant consideration under the first and fourth *Jones Motor* factors. *See Ballard Shipping*, 752 F.Supp. at 549 (considering plaintiff's initiation of suit as one relevant factor in waiver analysis).

Lehman contends that the plaintiff's initiation of the suit is, in fact, a dispositive indicator of waiver, and cites to four middle-aged cases from this circuit as support. *See Morales Rivera v. Sea Land of Puerto Rico, Inc.*, 418 F.2d 725, 726 (1st Cir.1969) (finding that plaintiffs waived the right to arbitrate where plaintiffs filed suit, then failed to prosecute, and then argued that the court lacked jurisdiction because the underlying agreement called for arbitration); *Hilti v. Oldach*, 392 F.2d 368, 372 n. 9 (1st Cir.1968) (distinguishing, in *dicta* in a footnote, cases in which a defendant initially fails to raise arbitration as a defense from cases in which a plaintiff seeks to stay his own action); *Gutor Int'l AG v. Raymond Packer Co., Inc.*, 493 F.2d 938, 945 (1st Cir.1974) (finding waiver where a party unconditionally submitted part of an arbitrable matter to the courts, but later attempted to take advantage of the arbitration clause when the opposing party counterclaimed); *Ferber Co. v. Ondrick*, 310 F.2d 462, 464–65 (1st Cir.1962) (holding that prime contractor plaintiffs in an interpleader action could not press arbitration for a counterclaim by a subcontractor).

Reliance on these cases is unavailing for several reasons. In *Morales Rivera*, the court refused to allow the plaintiffs to resurrect via arbitration a claim that they brought but failed to prosecute. The court reasoned: "[Plaintiffs] cannot proceed with an action until it proves unsuccessful, then avoid the effect by pleading their own contractual breach in having brought it.

Plaintiffs are seeking to play games with a court which the record shows has been more than patient with them." *Morales Rivera*, 418 F.2d at 726. No such manipulation or wasting of judicial resources has occurred here. Moreover, it seems that the court in *Morales Rivera* framed somewhat differently, and then left unresolved, the issue presented here. Curiously, the court stated: "We are not concerned with the principle that a party may be allowed to rescind such a waiver in the absence of prejudice." *Id.* (citing *Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696 (2d Cir. 1968)). Looking to *Carcich* to see what the First Circuit reserved judgment on in *Morales Rivera*, that case squarely held that mere participation in a suit would not constitute waiver absent prejudice to the party opposing arbitration. *Carcich*, 389 F.2d at 696. In a footnote, however, the court in *Carcich* distinguished a case in which a plaintiff brought suit without first availing himself of an arbitration clause. *Id.* at 696 n. 8. Rather than resolve this quandary, it suffices to say that, with its quirky facts and indefinite reference to "rescission of waiver," *Morales Rivera* is of limited use in resolving the issue before this Court.

The *Gutor* case pre-dates First Circuit cases which more directly confront the prejudice requirement, but the facts of *Gutor* certainly suggest that the court based its finding of waiver on more than plaintiff's initiation of the suit. The plaintiff had won its motion for summary judgment as to its claims, and if it had successfully revived the arbitration clause as to defendant's counterclaims, the dispute would have shifted to an arbitration tribunal in Zurich to be decided under Swiss law. *Gutor*, 493 F.2d at 945. In fact, the court in *Gutor* speaks in terms of prejudice to the defendant; the court found that the plaintiff was attempting to "take advantage of the arbitration clause to urge judicial abstention to the prejudice of Packer." *Id.* Moreover, both *Gutor* and *Ferber* involved an attempt by a plaintiff to press its own claims in court, but force the defendant's counterclaims into arbitration.

The *Hilti* footnote, which spawned intense debate among the parties, does little to further Lehman's argument. The footnote does not indicate that the First Circuit was in any way adopting the rationale of either of the two cases cited. Rather, the court simply distinguished the line of cases in which a defendant sought arbitration from cases in which a plaintiff sought arbitration. Such a distinction is appropriate, and is not inconsistent with a *Jones Motor* approach wherein plaintiffs' initiation of the suit is a relevant consideration in a waiver analysis.

Two additional factors undercut Lehman's argument. First, all four of the cases it cites pre-date the Supreme Court's decision in *Moses H. Cone*, which directs courts to resolve all doubts about arbitrability in favor of arbitration. Second, if plaintiffs' initiation of a suit were the determinative factor Lehman asserts it to be, it is difficult to understand why the *Jones Motor* test would, by its terms, apply to plaintiffs and defendants alike. Yet the court in *Jones Motor* adopted a standard to apply to "a party ... *usually a defendant* ..." who seeks to compel arbitration. *Jones Motor*, 671 F.2d at 44 (emphasis added). While it is the more typical scenario that a plaintiff seeks to oppose a defendant's motion to arbitrate, the cases consistently speak in general terms. *See, e.g., Navieros Inter–Americanos*, 120 F.3d at 316 (requiring "[t]he party opposing the motion to compel arbitration" to show prejudice); *Lifetime Med. Nursing Servs., Inc. v. Cambridge Automation Corp.*, 780 F.Supp. 882, 884 (D.R.I.1991) (finding that "the party objecting to arbitration" must show prejudice.) I thus turn to the remainder of the *Jones Motor* analysis.

■ The second and third *Jones Motor* factors look to whether the "litigation machinery has been substantially invoked," whether the parties were well into their preparation for the suit, and whether trial of the matter was close at hand before

arbitration was raised. *Id.; see also American Recovery Corp. v. Computerized Thermal Imaging, Inc.,* 96 F.3d 88, 96 (4th Cir.1996) (finding that a party did not waive its right to arbitration by filing two declaratory judgment actions). These factors cut against a finding of waiver in this case. Lehman urges us to consider a "two year" delay by the plaintiffs in raising arbitration, but that description belies the unusual procedural history of this case. Just weeks after the complaint was filed, this case was stayed for nearly a year, after which Lehman filed its answer and motion to dismiss. No discovery has yet taken place. Similarly unavailing is Lehman's attempt to impute to plaintiffs the actions of the SEC; plaintiffs presence in that case as interested parties does not somehow conflate that action with this one. Plaintiffs never moved to intervene in that action, and their participation as amici, and presence at hearings, are not enough to constitute a waiver of their rights in a separate—albeit related—suit.

The fifth *Jones Motor* factor looks to whether "important intervening steps," such as the parties taking advantage of judicial discovery, have taken place. As mentioned above, no discovery has taken place in this case. On this point, Lehman argues that, by forcing Lehman to answer, plaintiffs have received the benefit of Lehman's "full explication of its position on the facts and the law, without having to subject *themselves* to any discovery ..." (Lehman Reply Mem. at 13). As a threshold matter, Lehman had the option of filing the motion to dismiss in lieu of the answer pursuant to Fed.R.Civ.P. 12(b). Moreover, nothing in Lehman's answer or motion to dismiss revealed facts or positions of which any competent opposing party would not be aware. Furthermore, Lehman's work to date will hardly be wasted; it can argue its well-supported positions at arbitration. Lehman now has

extensive familiarity with the plaintiffs' positions as well, stemming from their participation as *amici* and the affidavits provided by plaintiffs at the request of the SEC. Both sides will be able to take advantage of the large body of discovery from the SEC action.

The heartland of the parties' dispute involves the sixth and final factor in the *Jones Motor* waiver analysis: prejudice. Lehman argues that a *defendant* asserting that a *plaintiff* has waived arbitration rights need not show that it has been prejudiced by the plaintiff's delay in switching forums. Plaintiffs assert that the First Circuit now explicitly requires prejudice as a necessary pre-condition to finding waiver.

■ It has long been clear that a plaintiff asserting waiver of arbitration by a defendant must show prejudice caused by the defendant's delay. *See Commercial Union Ins. Co. v. Gilbane Bldg. Co.,* 992 F.2d 386, 390 (1st Cir.1993); *Page,* 806 F.2d at 293–94; *Sevinor v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 807 F.2d 16, 18 (1st Cir.1986) (requiring plaintiffs to show prejudice in order to prevail on a claim of waiver). Interestingly, the First Circuit hinted in a 1995 decision that the prejudice consideration might not be dispositive, but the court did not reformulate its previous approach. *See Menorah Ins. Co., Ltd. v. INX Reinsurance Corp.,* 72 F.3d 218, 221 (1st Cir.1995) (finding, given the facts of the case, no reason to decide whether to follow a "litmus test of a showing of prejudice" or a totality of the circumstances approach). But the most recent pronouncements from this circuit on the matter are, in the opinion of this Court, unequivocal: "The party opposing the motion to compel arbitration—that is, the party urging a waiver—must show prejudice." *Navieros Inter–Americanos,* 120 F.3d at 316;[6] *accord Brennan v.*

---

**6.** The Seventh Circuit has taken the position that "an election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate." *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.,* 50 F.3d 388, 390

*King,* 139 F.3d 258, 263 (1st Cir.1998) (finding no waiver of arbitration where the party opposing arbitration was not "prejudiced by the delay" in seeking arbitration).

In determining whether a party opposing arbitration has shown prejudice, courts have looked to whether that party's legal position has been affected by the other party's delay in seeking arbitration. *See Ballard Shipping,* 752 F.Supp. at 551 (citing *Stone v. E.F. Hutton & Co.,* 898 F.2d 1542, 1543 (11th Cir.1990)) (finding prejudice where the moving party's delay allowed it to raise the defense of laches against defendant); *see also Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.,* 754 F.2d 457, 466 (2d Cir.1985) (looking to "changed circumstances" between the parties in order to resolve the prejudice question).

In some circumstances, the delay itself has been found to be prejudicial, but only where the facts suggest that the party opposing arbitration has incurred significant prejudice that it would otherwise have avoided. *See Navieros Inter–Americanos,* 120 F.3d at 316 (finding prejudice, despite only one month delay from filing of complaint to request to arbitrate, where the request came on the eve of trial after the parties had "scrambled to prepare their cases"); *Menorah Ins.,* 72 F.3d at 221 (finding prejudice where the moving party initially declined an invitation to arbitrate, allowed a default judgment to be entered against them, and raised arbitration on eve of having judgment entered against them).

Lehman asserts that if it had known plaintiffs intended to arbitrate, it would have insisted on going forward with arbitration rather than waiting for the result of the SEC litigation. This seems a rather makeweight argument, since Lehman's position—either in litigation or in arbitration—was strengthened by the outcome of the SEC case. A stay in this matter benefitted both parties; it seems highly unlikely that Lehman would have opted to engage in dual, concurrent legal proceedings had plaintiff sought intervention earlier. As for Lehman's lament, in passing, that certain witnesses have left Lehman's employ since the filing of plaintiffs' complaint, there is no indication that these individuals are now unavailable to Lehman should it need to call them.

Finally, Lehman asserts that the expense it incurred in preparing its motion to dismiss is sufficient to constitute prejudice. But the expense of filing responsive pleadings has not been held to be sufficient prejudice in the *Page* and *Jones Motor* waiver analysis. *See, e.g., Lifetime Med.,* 780 F.Supp. at 885 (finding no prejudice to plaintiff, despite the fact that an answer and cross-claim were filed and that the discovery period had nearly expired before defendant raised arbitration). Prejudice does not arise from the fact that Lehman must now prepare its case before a new tribunal. *See Page,* 806 F.2d at 294 (finding no prejudice despite plaintiff's argument that it would need to "restart the entire process" nearly two years after the complaint was filed). Moreover, this Court can easily cure any monetary loss to Lehman by requiring plaintiffs to pay the attorneys fees and expenses incurred in preparing the motion to dismiss. As for Lehman's allegation that plaintiffs' actions resulted in the freezing of $4 million of its funds for over two years, here again Lehman is imputing to plaintiffs the actions of the SEC.

Lehman argues that applying the *Jones Motor* framework in this manner naively

(7th Cir.1995). However, even *Cabinetree* recognized that it was easy to imagine situations in which invocation of the judicial process did not signify an intention to proceed in court to the exclusion of arbitration, and in those "abnormal" cases, "the district court should find no waiver or should permit a previous waiver to be rescinded." *Id.* at 390–

91. The court found occasion to distinguish *Cabinetree* on this basis in *Iowa Grain Co. v. Brown,* 171 F.3d 504, 509–10 (7th Cir.1999), where plaintiffs had originally filed a class action in district court (the class form being unavailable in arbitration), but then promptly moved to compel arbitration when the class action was dismissed.

misses the point: plaintiffs are discovering a new-found desire to arbitrate because they now face negative First Circuit precedent well-briefed by Lehman in its motion to dismiss and want another bite of the apple in a different, perhaps more favorable, forum. *See SEC v. Lehman,* 157 F.3d 2; *Greebel v. FTP Software,* 194 F.3d 185, 196 (1st Cir.1999) (requiring plaintiff in suit under PSLRA to plead facts which give rise to a "strong inference" of scienter). Lehman's argument is well taken. The outcome of the SEC action, in combination with the *Greebel* decision, makes the plaintiffs' prospects for success rather bleak. *See also In re Centennial Technologies Litig.,* No. 97–10304–REK (D.Mass. Oct.23, 1999) Practice and Procedure Order No. 8 at 2–3 (allowing Lehman's motion to dismiss in a related class action because plaintiffs failed to meet pleading requirements on scienter required by the PSLRA).

Indeed, the court in *Jones Motor* discouraged courts from allowing "a party sensing an adverse court decision a second chance in another forum." *Jones Motor,* 671 F.2d at 43; *see also Morales Rivera,* 418 F.2d at 726 (holding that plaintiffs' "suddenly discovered affection for arbitration" came too late when the claim was made after the action was dismissed with prejudice for failure to prosecute). Moreover, "[a]rbitration clauses were not meant to be another weapon in the arsenal for imposing delay and costs in the dispute resolution process." *Menorah Ins.,* 72 F.3d at 222. But the circumstances under which courts have invoked these principles differ significantly from the facts of this case. *See, e.g., Jones Motor,* 671 F.2d at 44 (finding waiver where the parties had engaged in considerable discovery, and cross-motions for summary judgment had been filed and decided before the defendant moved to compel arbitration); *Menorah Ins.,* 72 F.3d at 221 (finding waiver where defendant refused original request for arbitration and litigation had been pro-

ceeding for over a year); *cf. Morales Rivera,* 418 F.2d at 726 (denying plaintiff's motion to vacate dismissal and compel arbitration where case had been dismissed with prejudice for plaintiff's failure to prosecute); *Reid Burton Constr., Inc.,* 614 F.2d at 701 (finding that defendants were properly denied the right to arbitrate where both parties had prepared for trial, the defendants had denied they were subject to the bargaining agreement providing for arbitration, and the defendants did not indicate desire to arbitrate until trial was underway).

This litigation simply has not proceeded so far that plaintiffs' motion to stay could only be described as a manipulation of this Court. The litigation was filed within days of the running of the statute of limitation, and plaintiffs claim that a suit was the only way to preserve the status quo in a forum in which all the defendants, including Mr. Pinez,[7] could be joined. It was consistent with judicial economy for all parties to await the outcome of the circuit appeal rather than proceed in two fora simultaneously. In the unusual context of this litigation, and in light of the vigorous policy favoring arbitration, I conclude that plaintiffs' conduct before this Court does not amount to an implicit waiver either under a litmus test requiring a show of prejudice, or a totality of circumstances test which considers prejudice as one factor.

### ORDER

For the foregoing reasons, I **ALLOW** plaintiffs' motion to stay this action pending arbitration (Docket No. 10). However, as a condition of the stay, plaintiffs shall be required to compensate defendant for the reasonable attorneys fees and expenses incurred in preparing and pressing its motion to dismiss. The cross-motion of Lehman to enjoin arbitration (Docket No.

---

7. Mr. Pinez has been incarcerated since 1997.

 

13) is **_DENIED._** The motion to dismiss (Docket No. 5) is **_DENIED._**