## MOSSEW v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit.   May 19, 1920.)

No. 204.

1. **War ☞4—Charging unreasonable price for sugar not criminal offense under Lever Act.**

   An indictment charging the making of an unjust and unreasonable charge for sugar sold at retail *held* not to charge a criminal offense, under Food Conservation Act Aug. 10, 1917, § 4 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ff), which, while making certain acts unlawful, prescribes no penalty for its violation, nor is any prescribed elsewhere in the act.

2. **Criminal law ☞979(1)—Judgment entered without jurisdiction void.**

   A judgment convicting a defendant of a crime for which there is no statutory authority, although entered on a plea of guilty, and the fine imposed has been paid, is void.

3. **Criminal law ☞89—Federal courts have no common-law criminal jurisdiction.**

   The federal courts have no criminal jurisdiction, except of offenses created by act of Congress, and for which the punishment is also prescribed by statute.

4. **Criminal law ☞998—Void judgment may be canceled after term.**

   A void judgment may lawfully be canceled on motion after notice, even after expiration of the term at which it was entered.

5. **Criminal law ☞1—"Crime" defined.**

   A "crime" is a wrong which the government notices as injurious to the public, and punishes in what is called a criminal proceeding.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Crime.]

In Error to the District Court of the United States for the Northern District of New York.

Criminal prosecution by the United States against Joseph Mossew. Judgment of conviction (261 Fed. 999), and defendant brings error. Reversed.

The defendant stands convicted, by a plea of guilty, to an indictment presented by the grand jury charging him, in three counts, with an alleged offense of selling sugar at an unfair, unjust, and unreasonable rate or charge. Defendant sued out this writ of error.

Mangan & Mangan, of Binghamton, N. Y., for plaintiff in error.
D. B. Lucey, U. S. Atty., of Ogdensburg, N. Y.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge.   [1] This indictment was presented by the grand jury on the 10th day of June, 1919.   The first count of the indictment charges that the plaintiff in error, within the jurisdiction of the District Court, was engaged as a retail grocer, doing business in the city of Binghamton, state and Northern district of New York, and was there handling and selling certain necessities of life, including granulated sugar;

"That at all the said times herein mentioned the fair, just, reasonable, and controlling rate, charge, and price in handling and dealing in granulated

sugar to the retail trade in said city of Binghamton was and is from 10 to 11 cents per pound, which said fair, just, and reasonable rate and charge in handling and dealing in granulated sugar to the retail trade had theretofore been fixed according to law by the proclamation of the President of the United States and the rules and regulations promulgated by the President of the United States and the United States Food Administrator, pursuant to the provisions of the National Defense Act approved August 10, 1917, and the amendments thereto.

"That on the 8th day of July, 1919, the said defendant, in the said city of Binghamton, did unlawfully, knowingly, and feloniously, for the purpose of gain and profit, handle, sell, and distribute to one Margaret Donovan three pounds of granulated sugar, for which said defendant did then and there exact from and charge to the said Margaret Donovan 15 cents per pound for the said sugar, which said rate and charge was then and there unfair, unjust, and unreasonable in handling and dealing in said granulated sugar, contrary to the form of the statute in such case made and provided and against the peace and dignity of the United States."

The second count of the indictment alleges that in violation of the National Defense Act (chapter 53, 40 Stat. 276, approved August 10, 1917 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛r]), the plaintiff in error dealt in sugar as follows:

"That at all the said times herein mentioned the fair, just, reasonable, and controlling rate, charge, and price in handling and dealing in granulated sugar to the retail trade in the said city of Binghamton was and is from 10 to 11 cents per pound, which said fair, just, and reasonable rate and charge in handling and dealing in granulated sugar to the retail trade in said city had theretofore been fixed according to law by the proclamation of the President of the United States and the rules and regulations promulgated by the President of the United States and the Food Administrator, pursuant to the provisions of the National Defense Act approved August 10, 1917, and the amendments thereto.

"That on the 9th day of July, 1919, the said defendant in the said city of Binghamton did unlawfully, knowingly, and feloniously, for the purpose of gaining profit, handle, sell, and distribute to one John Nealon, ten pounds of granulated sugar, for which said defendant did then and there exact from and charge to said John Nealon, 15 cents per pound for said sugar, which said rate and charge was then and there unfair, unjust, and unreasonable in handling and dealing in said granulated sugar, contrary to the form of statute in such case made and provided and against the peace and dignity of the United States."

The third count of the indictment alleges as follows:

"That at all the said times herein mentioned the fair, just, reasonable, and controlling rate, charge, and price in handling and dealing in granulated sugar to the retail trade in the said city of Binghamton was and is from 10 to 11 cents per pound, which said fair, just, and reasonable rate and charge in handling and dealing in granulated sugar to the retail trade had theretofore been fixed according to law by the certain proclamation of the President of the United States and the rules and regulations promulgated by the President and the United States Food Administrator, pursuant to the provisions of the National Defense Act approved August 10, 1917, and the amendments thereto.

"That on the 29th day of July, 1919, the said defendant in the said city of Binghamton did unlawfully, knowingly, and feloniously, for the purpose of gaining profit, handle, sell, and distribute to one Albert F. Deuren a large quantity of granulated sugar, for which the said defendant did then and there exact from and charge to the said Albert F. Deuren the sum of 15 cents per pound, which said rate and charge was then and there unfair, unjust, and unreasonable in handling and dealing in said granulated sugar, contrary to the

form of statute in such case made and provided and against the peace and dignity of the United States."

This indictment is intended to be an accusation against the plaintiff in error for a violation of an act of Congress passed August 10, 1917, relating to conservation of supply and control of disposition of necessities. It is intended to guard against waste and a monopolizing or hoarding of necessities—to guard against unfair and unjust practices. It is also aimed at unjust and unreasonable charges in regard to such necessities. Among other things, the act provides (section 4 [section 3115⅛ff]):

"It is hereby made unlawful for any person to willfully destroy any necessaries for the purpose of enhancing the price or restricting the supply thereof; knowingly to commit waste or willfully to permit preventable deterioration of any necessaries in or in connection with their production, manufacture or distribution; to hoard, as defined in section 6, of this act, any necessaries; * * * to engage in any discriminatory and unfair, or any deceptive or wasteful practice or device, or to make any unjust or unreasonable rate or charge, in handling or dealing in or with any necessaries; to conspire, combine, agree, or arrange with any other person * * * to exact excessive prices for any necessaries; or to aid or abet the doing of any act made unlawful by this section."

Section 5 of the act (section 3115⅛g) provides for licensing dealers, and imposes a penalty for violation of this section. It provides that its provisions shall not apply to retail dealers. Section 6 (section 3115⅛gg) defines hoarding, and provides a penalty for violation of its provisions; but charging an excessive or unreasonable price is not within the definition of hoarding. Section 9 (section 3115⅛i) provides a penalty for conspiracy in regard to necessities.

On August 12, 1919, the plaintiff in error pleaded not guilty, but thereafter withdrew this plea and pleaded guilty. He was sentenced to pay a fine of $200 on the first count of the indictment, $200 on the second count, and $100 on the third count. The fine was paid the same day.

Section 4 declares it unlawful to make any unjust or unreasonable rate or charge in handling or dealing in necessaries, but there is no provision for punishment of this particular act thus made unlawful. As to other offenses which are denounced by the act, for the doing of which acts the section makes it unlawful, a penalty is prescribed; but nowhere in the act is a penalty prescribed for doing any of the acts made unlawful by this section, and there is no general provision in the act announcing a penalty or prescribing punishment for a violation of these provisions, where no specific penalty or punishment is provided. It further appears that this alleged indictment charges certain acts as unlawful, that is to say, making an unreasonable and unjust charge for sugar; but no penalty or punishment for a violation of the statute is prescribed by a valid statute.

[2] We are of the opinion that no crime is charged in this indictment. Therefore the conviction, even though upon plaintiff in error's plea of guilty, is void. Payment of the fine cannot be deemed to be a voluntary contribution to the government, and has been held not to be a bar in a suit to recover. U. S. v. Rothstein, 187 Fed. 269, 109 C. C.

A. 521; Durr v. Howard, 6 Ark. 461; Devlin v. United States, 12 Ct. Cl. 266.

When the application was made to the District Judge below to set aside and vacate the conviction, the term of court at which he pleaded guilty had expired. The District Court held that it could not set aside or alter its final judgment after the expiration of the term at which the judgment was entered. The plaintiff in error has properly selected his remedy by suing out this writ of error.

In Bronson v. Schulton, 104 U. S. 415, 26 L. Ed. 797, the court said:

"It is a general rule of law that all the judgments, decrees or other orders of the courts, however conclusive in their character, are under the control of the court which pronounces them during the term at which they are rendered or entered of record, and they may then be set aside, vacated, modified, or annulled by that court. But it is a rule equally well established that, after the term has ended, all final judgments and decrees of the court pass beyond its control, unless steps be taken during that term, by motion or otherwise, to set aside, modify, or correct them; and, if errors exist, they can only be corrected by such proceeding by a writ of error or appeal as may be allowed in a court which, by law, can review the decision. So strongly has this principle been upheld by this court that, while realizing that there is no court which can review its decisions, it has invariably refused all applications for rehearing made after the adjournment of the court for the term at which the judgment was rendered; and this is placed upon the ground that the case has passed beyond the control of the court."

In Suydam v. Williamson, 20 How. 433, 15 L. Ed. 978, it was said:

"The rule is that, whenever the error is apparent on the record, it is open to revision, whether it be made to appear by bill of exceptions or in any other manner."

[3] In Tennessee v. Davis, 100 U. S. 257, 25 L. Ed. 648, it was said:

Congress "must first make an act a crime, affix a punishment to it, and prescribe what courts have jurisdiction of such an indictment, before any federal tribunal can determine the guilt or innocence of the supposed offender." Citing U. S. v. Hudson et al., 7 Cranch, 32, 3 L. Ed. 259.

And in the same case it was further said (100 U. S. at page 279 [25 L. Ed. 648]):

"Since that decision the law has been considered as settled that the Circuit Courts have no jurisdiction to try and sentence an offender, unless it appears that the offense charged is defined by an act of Congress, and that the act defining the offense, or some other act, prescribes the punishment to be imposed, and specifies the court that shall have jurisdiction of the offense."

In United States v. Hudson et al., 7 Cranch, 32, 3 L. Ed. 259, it was said:

"The only question which this case presents is whether the Circuit Courts of the United States can exercise a common-law jurisdiction in criminal cases. * * * The only ground on which it has ever been contended that this jurisdiction could be maintained is that, upon the formation of any political body, an implied power to preserve its own existence and promote the end and object of its creation necessarily results to it. * * * If it may communicate certain implied powers to the general government, it would not follow that the courts of that government are vested with jurisdiction over any particular act done by an individual in supposed violation of the peace and dignity of the sovereign power. The legislative authority of the Union must

first make an act a crime, affix a punishment to it, and declare the court that shall have jurisdiction of the offense. Certain implied powers must necessarily result to our courts of justice, from the nature of their institution. But jurisdiction of crimes against the state is not among those powers; * * * but all exercise of criminal jurisdiction in common-law cases we are of opinion is not within their implied powers."

[5] By failure to provide a penalty for an infraction of this statute, or to prescribe a punishment, the statute does not denounce the unlawful act as criminal. It is neither a misdemeanor nor a felony. A crime is:

"A wrong which the government notices as injurious to the public and punishes in what is called a criminal proceeding in its own name." 1 Bishop's Criminal Law, § 43.

[4] Although no demurrer was interposed or exception taken which then raised the question of the sufficiency of the indictment in the District Court, assignments of error have been filed which present to us the sufficiency of the indictment on this writ of error. We think that the indictment is insufficient to charge a crime, and is therefore void. The payment of the fine after this conviction was void. It was held in United States v. Rothstein, 187 Fed. 269, 109 C. C. A. 521, where a plea of nolo contendere was entered, and a fine imposed and paid, and subsequently the statute under which the fine was paid was declared unconstitutional, that the defendant therein named may petition successfully to refund his fine paid, when the indictment was subsequently dismissed. A void judgment may lawfully be canceled on motion after notice, even after the expiration of the term on which it is entered. Ex parte Crenshaw, 15 Pet. 119, 10 L. Ed. 682.

We think the writ of error should be sustained, and the judgment reversed.