## CIRCUIT COURT OF WARREN COUNTY

Commonwealth of Virginia

v.

William V. Robinson

June 14, 1975

By JUDGE ROBERT K. WOLTZ

The defendant appeals from the District Court on its conviction of him on a warrant charging his violation of § 8-886. That section makes it "unlawful" for the owner thereof to allow certain animals "to run at large beyond the limits of his own lands" in an area where property boundary lines have been declared a lawful fence. Though this statute declares the act to be unlawful, it does not declare it to be a misdemeanor or felony, nor does it specify any punishment therefor.

The defense moves to dismiss the prosecution on the ground that § 8-886, failing to declare the act mentioned a misdemeanor and failing by its own terms or by reference to provide any punishment, cannot be a criminal statute, but is civil only and consequently no prosecution under it will lie.

Statutes which declare certain acts to be unlawful may be purely civil in their implications where they relate to the establishment or enforcement of rights, duties, liabilities or defenses between private individuals. This statute, restricted to its own terms, makes no reference to matters between man and man, but seems rather to impose a public duty or responsibility on those coming within its purview.

Where legislation touches upon the public interest rather than a private interest merely, if it proscribes certain activity as unlawful, then even though no penalty

is attached, the person committing the unlawful act may be punished as for a misdemeanor. "At the Common Law which, by virtue of the statute G.S. Section 4-1, is in force in this state, and with respect to the point presented remains unchanged, when a statute, in the interest of the public, commands an act be done or forbids an act, and, no penalty is expressly provided for its nonobservance or breach, the offending person may be punished as for a misdemeanor." *State v. Bishop,* 228 N.C. 371, 45 S.E.2d 858, 859 (1947).[1]

The foregoing principal of common law would likewise appertain in this jurisdiction for the common law is the law of this jurisdiction by virtue of § 1-10, Code of 1950, unless it is "repugnant to the principles of the Bill of Rights and Constitution of this State" or unless it has been altered by act of legislature. Finding no such repugnancy and knowing of no alteration by legislative enactment, I conclude that the above-quoted principle is the law of this jurisdiction.

In addition, I am constrained to find this statute criminal in its application and effect because in the article (Article 3 of Chapter 38 of Title 8) immediately preceding the article in which this section appears, the civil aspects of damages for trespass by animals in connection with the "fence" laws seems to be covered fully. In that article, assessment for damages by trespassing livestock is set out for areas in which a "no fence" law is in effect; likewise punitive damages, double damages, liens on the trespassing animals, impounding of the animals, and procedures for impoundment are all set forth. In view of the foregoing statutory provisions, there would be no necessity or reason for the existence of § 8-886 if it were civil in nature. In view of the foregoing reasons

---

[1] In Mossew v. United States, 266 F. 18, 11 A.L.R. 1261 (2d Cir. 1920), prosecution was had under World War I legislation for charging an unreasonable amount for the sale of sugar. Many of the sections of the act provided a penalty for engaging in certain conduct. The section under which this prosecution was had declared the conduct unlawful but prescribed no penalty, and the Court held that this section consequently created no crime. But the precedential value of Mossew v. United States is largely illusory; being a federal prosecution, it was strictly statutory and the above principle of common law would be inapplicable.

and the rule of statutory construction that some meaning and purpose must be given to a statute if that can be reasonably done, the "unlawful" in § 8-886 must refer to a criminal rather than a civil wrong.

In *Robinson v. Commonwealth*, 206 Va. 766 (1966), involving this same defendant in a similar prosecution, though the issue of the criminality of § 8-886 was presented, the Supreme Court of Appeals decided the case on other grounds and did not reach the point. In the course of its opinion, however, the Court did mention a shift of the trial court's attention from the penal portion of an ordinance "to a consideration of the penal provisions of the state statute."

Section 18.1-6 of the Code divides criminal offenses into felonies and misdemeanors, the former being those punishable with death or penitentiary sentences and all others being classified as misdemeanors. Section 18.1-9 sets out the punishment for misdemeanors for which no specific punishment is otherwise provided.

As a further point against a criminal interpretation of § 8-886, the defendant asserts that the statute requires no knowledge by the owner of the animals running at large that they are doing so. A contrary construction of the statute was given in *Rice v. Turner*, 191 Va. 601 (1950), in which it was held that this section does imply knowledge, consent, or willingness of the owner with respect to animals running at large.

Therefore, for the foregoing reasons, I conclude that § 8-886 creates a misdemeanor punishable under Section 18.1-9.

The defendant also points to § 8-885 which provides that the boundary lines of land in areas under quarantine shall be lawful fences and makes it a misdemeanor knowingly to permit animals to run at large in such quarantined area, provides by way of punishment a fine of not less than five, nor more than twenty-five dollars. He maintains that if § 8-886 is criminal in nature, the punishment prescribed under § 18.1-9 is not more than 12 months in jail or not more than $1,000 fine or a combination of the two.

Contrasting the disparity in punishment under the two sections, he argues that violation of the quarantine statute is a more serious one and hence the disparity in punishments is arbitrary, capricious, and a violation of equal protection provisions. For whatever reason any disparity may exist, and those reasons may well be entangled with a very lengthy legislative history on fence laws in Virginia,[3] it is the prerogative of the legislature to impose different penalties for different offenses defined by it. It is not unusual, nor is it fatal that from time to time certain anomalies arise in this respect, assuming that an anomaly is presented here.

It is my opinion that § 8-886 is a criminal statute despite the fact that it does not by its own terms prescribe a penalty or declare the forbidden activity to be a misdemeanor, that the forbidden acts are punishable under the general misdemeanor punishment statute, § 18.1-9, and that such punishment provisions are not invalid because of the substantially lower maximum penalty prescribed in § 8-885.

[3] Poindexter v. May, 98 Va. 143 (1900), in discussing the status of "fence law" in Virginia finds the statutory genesis of such law in an act of the colonial legislature of 1631.