Klinedinst v. Tiger Drylac          CV-01-040-M    11/28/01
                    UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE


Kenneth Klinedinst,
      Plaintiff

      v.                                Civil No. 01-040-M
                                        Opinion No. 2001 DNH 212
Tiger Drylac, U.S.A., Inc.,
      Defendant


                          **O R D E R**


      Plaintiff has sued his former employer under 42 U.S.C. §

2000e, et seq. ("Title VII") and 29 U.S.C. § 623(a)(1), et seq.

(the Age Discrimination in Employment Act of 1967, hereinafter

"ADEA"), complaining of national-origin discrimination and age

discrimination.  Before the court is defendant's motion to compel

arbitration and stay the pending litigation (document no. 11), to

which plaintiff objects.



                      **Factual Background**

      Plaintiff was employed as a salesman from December 1, 1990

until his termination on November 1, 1999.  The relationship

between plaintiff and defendant was governed by an employment

agreement, executed in November 1990, which contained the following provisions relevant to this case:

4. The Employee shall comply with all standards of performance, policies, rules, regulations and manuals issued by Employer, receipt of which by the Employee is hereby acknowledged (see Attachment 1). The Employee shall also comply with such future Employer policies, rules, regulations, performance standards and manuals as may be published or amended from time to time.

. . .

11. This Agreement and the rights and obligations of the parties hereunder shall be governed by and construed and enforced in accordance with the laws of the State of California. Furthermore, in the event that any proceeding is instituted to interpret or enforce any term hereof such proceeding shall take place in the West District of the County of San Bernadino.

12. All disputes arising out of this Agreement, including disputes arising from the termination of employment by Employer, shall be submitted to binding arbitration in accordance with the rules of the American Arbitration Association and within Western San Bernadino County before a panel of three arbitrators chosen in accordance with such rules. The arbitrators shall be bound by the laws of the State of California to the same extent provided in Paragraph 11 of this Agreement. The award of the arbitrators shall be final and binding upon all of the parties hereto and judgment upon the award may be entered in any court of competent jurisdiction.

13. Employer may, without submitting to arbitration as provided in Paragraph 12 of this Agreement, seek and obtain from any court of competent

2

jurisdiction a preliminary and/or permanent injunction with respect to any of the matters covered in this Agreement.

14.   It is the desire and intent of the parties that the terms, provisions, covenants and remedies contained in this Agreement shall be enforceable to the fullest extent permitted by law.  If any such term, provision, covenant or remedy of this Agreement or the application thereof to any person or circumstance shall, to any extent, be construed to be invalid or unenforceable in whole or in part, then such term, provision, covenant or remedy shall be construed in a manner so as to permit its enforceability under the applicable law to the fullest extent permitted by law. In any case, the remaining provisions of this Agreement or the application thereof to any person or circumstance other than those to which they have been held invalid or unenforceable, shall remain in full force and effect.

15.   The failure to insist upon strict compliance with any of the terms, covenants or conditions of this Agreement shall not be deemed a waiver of such terms, covenants or conditions, and the waiver or relinquishment of any right or power under this Agreement at any one or more times shall not be deemed a waiver or relinquishment of such right or power at any other time or times.

. . .

18.   This instrument contains the entire Agreement between the parties with respect to the subject matter hereof.  It may not be changed orally but only by agreement in writing, signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

(Mot. to Compel Arb., Ex. 1 (hereinafter "Tryon Aff.") Ex. A at 2, 7-9 (Bates stamp K0048, K0053-55).)

The National Rules for the Resolution of Employment Disputes (Including Mediation and Arbitration Rules) used by the American Arbitration Association ("AAA"), as amended and effective on January 1, 2001,[1] include the following relevant provisions:

**34.  The Award**

.  .  .  .

d.  The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable, including any remedy or relief that would have been available to the parties had the matter been heard in court.  The arbitrator shall, in the award, assess arbitration fees, expenses, and compensation as provided in Sections 38, 39, and 40 in favor of any party and, in the event that any administrative fees or expenses are due the AAA, in favor of the AAA.

e.  The arbitrator shall have the authority to provide for the reimbursement of representative's fees, in

---

[1] These appear to be the rules cited in ¶ 12 of the employment agreement.  While the parties have submitted slightly different versions of these rules, or parts thereof (plaintiff's fragmentary version is dated June 13, 2001; defendant's complete version, from the same web site, is dated October 1, 2001), there seem to be no material differences between the two, and neither party disputes the validity of the version submitted by the other.

whole or in part, as part of the remedy, in accordance with applicable law.

. . . .

**38. Administrative Fees**

As a not-for-profit organization, the AAA shall prescribe filing and other administrative fees to compensate it for the cost of providing administrative services.  The AAA administrative fee schedule in effect at the time the demand for arbitration or submission agreement is received shall be applicable.

The filing fee shall be advanced by the initiating party or parties, subject to final apportionment by the arbitrator in the award.

The AAA may, in the event of extreme hardship on any party, defer or reduce the administrative fees.

**39. Expenses**

Unless otherwise agreed by the parties, the expenses of witnesses for either side shall be borne by the party producing such witnesses.  All expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the costs relating to any proof produced at the direction of the arbitrator, shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator directs otherwise in the award.

The arbitrator's compensation shall be borne equally by the parties unless they agree otherwise, or unless the law provides otherwise.

(Def.'s Reply Brief, Ex. B at 14-15 of 21.)  The AAA rules also

provide that "[u]nless the parties agree otherwise, arbitrator

5

compensation and administrative fees are subject to allocation by the arbitrator in the award." (Id. at 16 of 21.)  According to the AAA rules, the filing fee for a case before a three-arbitrator panel is $1,500 and the hearing fee is $250 per party per day.  (Id. at 16 of 21.)

On April 30, 1999, plaintiff executed the "Acknowledgement of Receipt" section of an employment handbook promulgated by defendant.  (Pl.'s Mem. Supp. Obj. to Mot. to Compel Arb., Ex. B at 3 (Bates stamp K0039).)  Portions of that handbook relevant to this case provide as follows:

> 1001 Introductory Statement
>
> . . .
>
> This Employee Handbook sets forth the policies of employment of all full- and part-time employees, and supervisors.  Individual written employment contracts may supersede some of the provisions of this handbook.
>
> This Handbook contains the policies and practices in effect at the time of publication.  All previously issued handbooks and any inconsistent policy or benefit statements or memoranda are superseded.
>
> 1002 Integration Clause and the Right to Revise
>
> This employee handbook contains the employment policies and practices of the Company in effect at the time of publication.  All previously issued handbooks and any

inconsistent policy statements or memoranda are superseded.

. . .

Nothing in this employee handbook, or in any other personnel document, including benefit plan descriptions, creates or is intended to create a contract or obligation to any employee.

1003 Acknowledgement of Receipt

I have received my copy of the Company's employee handbook. I understand and agree that it is my responsibility to read and familiarize myself with the policies and procedures contained in the handbook.

I understand that except for employment the Company can change at-will status, any and all policies or practices at any time for any reason. The Company reserves the right to change my hours, wages and working conditions at any time.
I understand and agree that nothing in the employee handbook creates or is intended to create a promise or representation of continued employment and that employment at the Company is employment at-will; employment may be terminated at the will of either the Company or myself. My signature below certifies that I have read and understood the agreement.

/s/

(Id. at 2-3.) Section 1005 of the employee handbook is titled "Equal Employment Opportunity," and describes: (1) how an applicant or employee with a disability may request an accommodation; and (2) defendant's procedure for investigating and remedying unlawful workplace discrimination. (Id. at 4 (Bates stamp K0021).) Section 1006 of the handbook is titled

7

"Unlawful Sexual Harassment and all other Forms of Unlawful Harassment." That section concludes with the following paragraph:

> The Company encourages all employees to report any incidents of harassment forbidden by this policy immediately so that complaints can be quickly and fairly resolved. If you think you have been harassed or that you have been retaliated against for resisting or complaining of such, you may file a complaint with the appropriate agency. The nearest office is listed in the telephone book.

(Id. at 5 (Bates stamp K0022).)

As noted, defendant terminated plaintiff's employment on November 1, 1999. Believing that his termination, as well as some of defendant's conduct toward him prior to his termination, constituted unlawful discrimination based upon his age and national origin, plaintiff filed a complaint with the New Hampshire Commission for Human Rights ("HRC") on April 24, 2000. He received a "Right to Sue" letter on November 20, 2000. (Compl. ¶ 5.)

This suit, alleging violations of Title VII and the ADEA, was initiated by complaint dated January 29, 2001 and filed on

8

January 31, 2001 (document no. 1). Defendant filed an answer and affirmative defenses on April 23 (document no. 7), and on May 11, the parties submitted a joint discovery plan, which was approved and adopted as a pretrial scheduling order on May 14 (document no. 8). The parties also jointly submitted a Stipulated Protective Order (document no. 10) which became an order of the court on June 15, 2001. Trial is set for the two-week period beginning June 4, 2002.

On June 6, defendant served interrogatories and requests for production of documents on plaintiff. (Tryon Aff. ¶ 3.) Plaintiff responded in due course. One of the documents produced by plaintiff was an executed copy of his employment agreement with defendant. (Id. ¶ 7.) Defendant filed its motion to compel arbitration on August 31.

As for the costs he has incurred litigating this matter before the HRC, the EEOC, and this court, plaintiff claims out-of-pocket expenses of approximately $3,500. (Pl.'s Surreply, Ex. C. (Klinedinst Aff.) ¶ 11.) He argues that, with an annual income of approximately $23,000 (id. ¶¶ 6-7), he would not be

able to meet his monthly financial obligations if he were forced to incur the costs of arbitrating this case under AAA rules, in San Bernadino, California (id. ¶ 16).

## Discussion

Defendant bases its motion to compel arbitration on: ¶ 12 of the Employment Agreement, § 2 of the Federal Arbitration Act ("FAA"), (9 U.S.C. § 1, et seq.), and the United States Supreme Court's recent decision in Circuit City Stores, Inc. v. Adams, 121 S.Ct. 1302 (2001) (resolving split among the circuits and holding that the FAA applies to all employment contracts except those of transportation workers). Plaintiff objects on grounds that: (1) the arbitration clause in his 1990 employment agreement was abrogated by the 1999 employee handbook; (2) defendant waived application of the arbitration clause by participating in the litigation of plaintiff's HRC complaint and this suit; (3) the arbitration clause is invalid because it does not give plaintiff adequate notice that his federal statutory claims are subject to arbitration; (4) the arbitration clause is invalid because it strips plaintiff of important statutory rights; and (5) the

10

arbitration clause is unenforceable because the arbitral forum is inaccessible to plaintiff.

The enforceability of contractual arbitration clauses is governed by the FAA, which provides, in pertinent part:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.[2] "When deciding whether the parties agreed to arbitrate a certain matter . . ., courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) (citations omitted); see also KKW Enters., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp, 184 F.3d 42, 50 (1st Cir. 1999) (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996) (Only "generally applicable contract defenses, such as fraud, duress or unconscionability, may be

---

[2] This provision applies to all employment agreements except those of transportation workers. See Circuit City, 121 S. Ct. at 1311 (construing 9 U.S.C. § 1).

11

applied to invalidate arbitration agreements without contravening

§ 2 [of the FAA])); <u>Rosenberg v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.</u>, 170 F.3d 1, 19 (1st Cir. 1999) (citations omitted). Furthermore:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Finally:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . .

9 U.S.C. § 4. As a general matter,

> courts are consistently mindful of the strong federal policy favoring arbitration. The Supreme Court has stated that any doubt concerning arbitrability "should

12

be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 (1983).

Creative Solutions Group, Inc. v. Pentzer Corp., 252 F.3d 28, 32 (1st Cir. 2001) (parallel citations omitted). In other words, "[t]he FAA creates a presumption in favor of arbitrability . . . ." Paladino v. Avnet Computer Techs., Inc., 134 F.3d 1054, 1057 (11th Cir. 1998) (citing First Options, 514 U.S. at 945). In light of these basic rules and presumptions, the court now turns to plaintiff's objections to defendant's motion to compel arbitration.

I.    Abrogation of the Employment Agreement by the Handbook

Plaintiff first argues that the arbitration clause in his 1990 employment agreement was abrogated by the 1999 employee handbook. But, the employment agreement was negotiated between plaintiff and defendant, while the employee handbook was not the subject of negotiation, and plainly stated that it: (1) was not intended to create a contract with or obligation to any employee; but (2) was intended to be superseded, in part, by individual written employment agreements. Thus, in the event of conflict

13

between a provision in the handbook and a provision in a written employment agreement, the employment agreement controls. Here, however, there is no conflict between the two documents.

The employment agreement requires arbitration of all disputes, while the handbook acknowledges that harassment claims may also be filed with an appropriate agency. If plaintiff had filed a harassment claim with HRC, then perhaps his argument for abrogation of the arbitration clause would have merit, but because plaintiff's underlying claim does not allege harassment, there is no conflict between the handbook and the employment agreement.[3] In sum, there is simply no basis for plaintiff's claim that the 1999 employee handbook abrogated the arbitration clause in his employment agreement.

---

[3] While it is plainly the case that sexual harassment is a form of discrimination for purposes of Title VII, see Clark County Sch. Dist. v. Breeden, 121 S. Ct. 1508, 1509 (2001) (citations omitted), it does not follow that all discrimination involves harassment. If defendant had intended to allow employees to file all discrimination claims, rather than just harassment claims, with "the appropriate agency," it could easily have said so in the Equal Employment Opportunity section of the handbook (§ 1005), but it did not. Rather, under the only reasonable reading of §§ 1005 and 1006 of the handbook, defendant abrogated the arbitration clause with respect to discrimination claims alleging harassment but no others.

II.  Waiver of the Arbitration Clause

The court rejects, as well, plaintiff's claim that defendant waived the arbitration clause.  In light of "the strong federal policy favoring arbitration," Creative Solutions, 252 F.3d at 32, "[w]aiver is not to be lightly inferred, and mere delay in seeking [arbitration] without some resultant prejudice to a party cannot carry the day."  Id. (quoting Page v. Moseley, Hallgarten, Estabrook & Weeden, Inc., 806 F.2d 291, 293 (1st Cir. 1986)).  As for when waiver may be inferred:

> This Circuit has laid down a set of factors to guide the determination of whether a waiver has occurred:
>
> > In determining whether a party to an arbitration agreement, usually a defendant, has waived its arbitration right, federal courts typically have looked to whether the party has actually participated in the lawsuit or has taken other action inconsistent with his right, . . . whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated by the defendant to the plaintiff, . . . whether there has been a long delay in seeking the stay or whether the enforcement of arbitration was brought up when trial was near at hand. . . .
> >
> > Other relevant factors are whether the defendants have invoked the jurisdiction of the court by filing a counterclaim without asking for a stay of the proceedings, . . . whether important intervening steps (e.g., taking advantage of

15

> judicial discovery procedures not available in
> arbitration . . . ) had taken place, . . . and
> whether the other party was affected, misled, or
> prejudiced by the delay . . . .
>
> Jones Motor Co., Inc. v. Chauffeurs, Teamsters, and
> Helpers Local Union No. 633, 671 F.2d 38, 44 (1st Cir.
> 1982) (quoting Reid Burton Constr. Inc. v. Carpenters
> Dist. Council, 614 F.2d 698, 702 (10th Cir. 1980)).

Creative Solutions, 252 F.3d at 32-33 (alterations in the
original).

In Creative Solutions, the court of appeals reversed the
district court's decision to deny a motion to compel arbitration
and stay proceedings because, inter alia: (1) the defendant
"initiated no formal discovery," id. at 33; (2) the defendant
engaged in no litigation activities other than moving to dismiss,
in response to the complaint, id.; (3) the defendant took no
"other steps inconsistent with its right to arbitration," id.
(quoting Williams v. Cigna Fin. Advisors, Inc., 56 F.3d 656, 661-
62 (5th Cir. 1995) (holding that removal to federal court, filing
motion to dismiss and to stay discovery and answer to complaint
including compulsory counterclaim, and exchanging Rule 26
discovery did not substantially invoke judicial process)); and
(4) the plaintiffs failed to demonstrate any prejudice resulting

16

from defendant's failure to invoke the relevant arbitration clause earlier.  Id. at 34.

In Page, the plaintiffs filed their complaint on March 15, 1984.  Page, 806 F.2d at 294.  "Discovery was completed on November 7, 1984."  Id.  The defendants filed a motion to compel arbitration on March 29, 1995, approximately twelve months after plaintiffs filed their complaint, but only three and one half weeks after a United States Supreme Court opinion that, in the defendants' view, signaled a change in the law governing the arbitrability of the plaintiffs' claim.  Id.  The district court required nine months to rule on the defendants' motion, ultimately denying it seventy-two hours before trial.  Id.  The defendants appealed, and the court of appeals ruled that because the plaintiffs could show no prejudice from being compelled to arbitrate, the defendants had not waived their right to invoke the arbitration clause.  Id. at 294-95.  In reaching that result, the court of appeals: (1) discounted plaintiffs' claim of prejudice arising from having prepared for trial, noting that defendants filed their motion nine months before trial (charging the district court rather than defendants with responsibility for

the delay), id. at 294 n.3; and (2) noted plaintiffs' stipulation that they were not prejudiced by having to engage in discovery, id.

In Jones Motor Co., where the dispute concerned the legality of a strike called by the defendant against the plaintiff, the court of appeals reversed the district court's sua sponte decision to enforce the arbitration clause in the parties' collective bargaining agreement. Jones Motor Co., 671 F.2d at 44. When the district court dismissed the case, defendant had already answered plaintiff's complaint, discovery had been completed, and both sides had moved for summary judgment. Id. at 41-42. The plaintiff moved unsuccessfully for reconsideration, id. at 41, and then appealed, arguing, inter alia, that "the district court erred in finding that there was no waiver by the [defendant] of its right to insist on arbitration," id. The court of appeals agreed:

> Applying those standards [quoted on pages 12 and 13, supra] here, the facts establish a waiver. The Local [defendant] was tardier in "raising" its arbitration defenses than were the defendants in [E.T.] Simonds [Constr. Co. v. Local 1330, Int'l Hod Carriers, 315 F.2d 291 (7th Cir. 1963)], [Bath Marine Draftsmen's Ass'n v.] Bath Iron Works [Corp., 266 F.

18

Supp. 710 (D. Me. 1967), aff'd with modifications, 393 F.2d 407 (1st Cir. 1968)], or Reid Burton [Constr., Inc. v. Carpenters Dist. Council, 535 F.2d 598 (10th Cir. 1976)]. Indeed, the Local did more than simply acquiesce in the jurisdiction of the court here; it engaged in considerable discovery; it prepared the case for summary judgment; and it waited until after the district court had decided that issue before it decided to advocate the propriety of arbitration. Thus, the Local was ready to accept the determination of the district court on the merits, actually moving the court to find summarily for it. It took actions inconsistent with its now-asserted right, delaying the enforcement of arbitration, and affecting, misleading, or prejudicing the Company [plaintiff] by its delay. We therefore hold that in this case the court should have considered the merits of the underlying dispute.

Jones Motor Co., 671 F.2d at 44.s

The facts of this case place it somewhere on the continuum formed by Creative Solutions, Page, and Jones Motor Co. Defendant made a discovery request to which plaintiff responded, but plaintiff does not claim, nor does the record suggest, that discovery is nearly complete. Thus, defendant has undertaken less discovery than the defendants in Page, where the court of appeals ruled that defendants had not waived their right to enforce the arbitration clause. And, unlike the defendant in Jones Motor Co., defendant here has not moved for a decision on the merits. Furthermore, while plaintiff seems to suggest that

19

he has been prejudiced by having to prepare his HRC/EEOC, case as well as for the early stages of this litigation, he does not claim that that preparation is without value in preparing for arbitration.

The facts here present a somewhat close question on the issue of waiver, but the court is persuaded that defendant has not waived its right to invoke the arbitration clause in its agreement with plaintiff. The strong – and seemingly strengthening – federal policy favoring arbitration, see Creative Solutions, 252 F.3d at 32, and the following facts militate in favor of that conclusion: (1) the parties have not yet completed discovery; (2) defendant filed its motion to compel arbitration approximately nine months before the scheduled trial date; (3) defendant has filed no dispositive motions; and (4) the employment agreement between the parties specifies that failure to insist upon strict compliance with any term of the agreement is not to be construed as a waiver of that term.

Finally, while plaintiff frames the waiver issue in terms of the inequity of permitting defendant to sit back silently while

he pursued his HRC/EEOC action and initiated this suit, thus "springing" arbitration on him relatively late in the game, it would be equally inequitable – if not more so – to permit plaintiff to pursue this litigation in clear violation of the arbitration agreement he made.  See Rosenberg v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1, 21 n.17 (1st Cir. 1999) (citing Tiffany v. Sturbridge Camping Club, Inc., 587 N.E.2d 238, 240 n.5 (Mass. Ct. App. 1992)) for the "traditional rule of contract law that a party to a contract is assumed to have read and understood the terms of a contract [he or] she signs."). Given plaintiff's (or his counsel's) knowing disregard of the arbitration clause, and given the strong federal policy favoring such arbitration, see Creative Solutions, 252 F.3d at 32, it is not unfair for plaintiff rather than defendant to bear the consequences – and costs – of his decision to proceed before the HRC/EEOC and this court, rather than demanding arbitration, as required by his employment contract.  Accordingly, the court finds that despite its delay in calling for arbitration, defendant has not quite waived its contractual right to do so.

21

III. Notice of Arbitration of Federal Statutory Claims

Plaintiff next argues that the arbitration clause in his employment contract is invalid because it did not provide sufficient notice that he was waiving his right to a jury trial of any federal statutory claims that might arise during the course of his employment. The court does not agree.

In Rosenberg, a case in which the defendant/employer sought to compel arbitration of its employee's Title VII and ADEA claims, under the terms of an arbitration clause in an employment agreement, the court of appeals held that as a prerequisite to enforcement of the arbitration clause, "there [must] be some minimum level of notice to the employee that statutory claims are subject to arbitration." Rosenberg, 170 F.3d at 21 (footnote omitted). Plaintiff in this case had notice sufficient to satisfy the Rosenberg rule.

The plaintiff in Rosenberg was subject to an employment agreement that required arbitration of "any dispute, claim or controversy that may arise between me and my firm . . . that is required to be arbitrated under the rules, constitutions, or by-

22

laws of the organizations indicated in Item 10 as may be amended from time to time . . ." Id. at 4 (quoting the so-called "U-4 Form"). The court declined to enforce the arbitration clause in the U-4 Form because, inter alia, defendant never provided plaintiff with copies of the rules, constitutions, or by-laws under which arbitration was required, id. at 20, and falsely certified that it had done so, id. In reaching its decision, the court explained:

> Had the U-4 provided for arbitration of all disputes, or given explicit notice that employment disputes were subject to arbitration, we would have had little difficulty in finding that [plaintiff] Rosenberg had agreed to arbitrate her employment discrimination claims within the meaning of the 1991 CRA.

Id. at 18 (emphasis in the original).[4] Here, the employment agreement provided for arbitration of "[a]ll disputes arising out of this Agreement, including disputes arising from the termination of employment by Employer . . ." (Pl.'s Mem. Supp. Obj. to Mot. to Compel Arb., Ex. A. at 7 (emphasis added).) Under the Rosenberg rule, plaintiff's employment agreement

---

[4] The court in Rosenberg also explained, in a footnote, that "[i]f Merrill Lynch had provided the rules to Rosenberg but she did not read them, that would not save her [from arbitration.]" Id. at 21 n.17 (citing Tiffany, 587 N.E.2d at 240 n.5).

adequately informed him that statutory claims related to his employment were subject to arbitration because it informed him, expressly, that all disputes arising from his employment were subject to arbitration. The phrase "all disputes" necessarily includes disputes over statutorily conferred rights.

IV.   Surrender of Important Statutory Rights

Plaintiff further argues that the arbitration clause is invalid because it strips him of an important statutory right, namely his right to the remedies provided by Title VII and the ADEA, which include punitive damages (Title VII), liquidated damages (the ADEA), and attorney's fees (both statutes). Plaintiff's argument, however, misapprehends the relevant portion of his employment agreement.

According to ¶ 11, the agreement itself "and the rights and obligations of the parties hereunder shall be governed in accordance with the laws of the State of California." (Tryon Aff., Ex. A at 7 (Bates stamp K0053).) And according to ¶ 12, the arbitrators hearing any dispute referred to them "shall be

24

bound by the laws of the State of California to the same extent provided in Paragraph 11."  (Id.)

Those provisions, unlike the contract language at issue in Graham Oil Co. v. ARCO Products Co., a Division of Atlantic Richfield Co., 43 F.3d 1244 (9th Cir. 1994), do not operate to deprive plaintiff of any statutory rights.  In Graham Oil, the Ninth Circuit struck down an arbitration clause because it expressly denied plaintiff the benefit of certain rights to which it was entitled under the federal Petroleum Marketing Practices Act ("PMPA"), such as exemplary damages, attorney's fees, and a one-year statute of limitations.  Id. at 1247-48.  In other words, the court declined to enforce the arbitration clause because it contravened the PMPA.  Id. at 48.

Here, by contrast, the arbitration clause does not contradict either Title VII or the ADEA.  Rather, it simply provides that California law shall apply in: (1) deciding all employment related disputes between the parties arising under the contract; and (2) governing the work of the arbitrators who may decide any such disputes.  No part of the employment agreement,

25

including the forum selection and choice of law provisions, purport to limit the remedies available to plaintiff in an arbitration proceeding, and no part of the employment agreement bars plaintiff from submitting his federal Title VII and ADEA claims to arbitration. All the employment agreement precludes is application of the law of any state other than California to resolve whatever state-law questions might arise between the parties. Because the use of California law to decide those state-law questions has no bearing on the remedies an arbitrator might award plaintiff if he succeeds on his Title VII and ADEA claims, the court finds that the arbitration clause does not require him to "forgo the substantive rights afforded by [Title VII and the ADEA]; [but only requires him to] . . . submit[] to their resolution in an arbitral, rather than a judicial forum." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985)).[5] As to the arbitration remedies

_____

[5] For plaintiff's argument on this point to have merit, he would have to maintain that there is some aspect of California law that operates to bar plaintiff from maintaining his claims under Title VII and the ADEA. But because plaintiff has made no such argument, and because such a position is unsupportable in the face of Graham Oil, the court cannot agree that the employment agreement in this case requires plaintiff to give up any of his statutory rights.

available to plaintiff, the AAA Rules specify that the range of remedies available to an arbitrator is at least co-extensive with the range of remedies available in court, and that the arbitrator may award the reimbursement of representative's fees as a part of the remedy. (See Def.'s Reply Brief, Ex. B at 14 of 21.)

V.     Inaccessibility of the Arbitral Forum

Finally, plaintiff contends that the arbitration clause is unenforceable because the arbitral forum is inaccessible to him. Specifically, he argues that three factors make the arbitral forum inaccessible: (1) high administrative fees associated with arbitration; (2) high costs of the arbitrator; and (3) the requirement that arbitration be conducted in San Bernadino, California, which entails significant travel costs as well as the cost of retaining California counsel. Defendant counters that plaintiff has failed to carry his burden of showing that: (1) he is likely to incur the expenses he claims to be prohibitive; (2) the costs of arbitration would be greater than the costs of litigation; and (3) that he is unable to pay the costs of arbitration. Defendant further counters that the location of arbitration in California presents no obstacle to enforcing the

27

arbitration clause because plaintiff knew that defendant was a California corporation when he agreed to work for it and voluntarily agreed to the forum selection clause he now seeks to avoid.

As a starting point, the court notes that "Gilmer, and the cases upon which it relies, make clear that whether a federal statutory claim can be subjected to compulsory arbitration depends upon whether the particular arbitral forum involved provides an adequate substitute for a judicial forum in protecting the particular statutory right at issue." Bradford v. Rockwell Semiconductor Sys., Inc., 238 F.3d 549, 555 (4th Cir. 2001) (quoting Williams v. Cigna Fin. Advisors, Inc., 197 F.3d 752, 763 (5th Cir. 1999)). Plainly, the question of cost to the plaintiff enters into the determination of whether an arbitral forum is an adequate substitute for a judicial forum. See Green Tree Fin. Corp. - Ala. v. Randolph, 121 S. Ct. 513, 522 (2000) ("the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating [his or] her federal statutory rights in the arbitral forum"); Bradford, 238 F.3d at 554; Shankle v. B-G Maint. Mgmt. of Colo., Inc., 163 F.3d 1230,

28

1234 n.3. (10th Cir. 1999). Furthermore, the Supreme Court has held that where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." <u>Green Tree</u>, 121 S. Ct. at 522.

While acknowledging that "the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating [his or] her federal statutory rights in the arbitral forum," <u>id.</u>, the Court in <u>Green Tree</u> did not offer any specific guidance as to how a party might bear its burden of proof because, in that case, the party seeking to avoid the arbitration clause provided "hardly any information" on the question of the costs she was faced with as a result of pursuing arbitration, leaving the Court to conclude that "[t]he 'risk' that [she] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement," <u>id.</u> Neither the Supreme Court not the First Circuit has mandated a specific test for deciding when, and under what circumstances, an arbitration clause in an employment agreement is unenforceable because the costs of arbitration render the arbitral forum an inadequate

29

substitute for a judicial forum.[6]  In the absence of explicit guidance from the Supreme Court, other circuits have developed two approaches: a _per se_ rule and case-by-case analysis.

In an opinion pre-dating _Green Tree_, and relied upon heavily by plaintiff, the D.C. Circuit established a _per se_ rule against arbitration agreements that require an employee to pay any portion of an arbitrator's fees and expenses.  See _Cole v. Burns_

---

[6] Questions as to the enforceability of an arbitration agreement are to be decided under state law, when those questions involve traditional contract defenses such as fraud, duress, and unconscionability.  See 9 U.S.C. § 2; _Dobbins v. Hawk's Enters._, 198 F.3d 715, 717 (8th Cir. 1999) (collecting cases recognizing "the potential that arbitration fees will make an arbitration agreement unconscionable" and explaining that "whether or not arbitration fees make the agreement to arbitrate unconscionable is something that must be determined on a case-by-case basis in light of the state law governing unconscionability").  Here, however, plaintiff does not claim that the employment agreement or the arbitration clause are unconscionable, which would require a finding of "unfair surprise and oppression," _Doctor's Assocs., Inc. v. Stuart_, 85 F.3d 975, 980 (2d Cir. 1996) (citations omitted), and because plaintiff has not raised that state-law contract defense, the court considers it to be forfeited, see _Doctor's Assocs., Inc. v. Hamilton_, 150 F.3d 157, 164 (2nd Cir. 1998) (ruling that defendant had waived objection to arbitration based upon unconscionability because, _inter alia_, "[he] failed to bring New Jersey law on unconscionability to the attention of the district court . . ."). Rather, the question before the court – whether the arbitral forum is an adequate substitute for a judicial forum – appears to be a question of federal common law. See _Hamilton_, 150 F.3d at 162-63 (quoting _Perry v. Thomas_, 482 U.S. 483, 492 n.9 (1987)).

Int'l Sec. Servs., 105 F.3d 1465, 1485 (D.C. Cir. 1997); see also
Bradford, 238 F.3d at 554 (interpreting Cole).[7] Like this case,
Cole involved a contractual arbitration clause that called for
arbitration in accordance with the rules of the American
Arbitration Association. However, the AAA rules in Cole, unlike
the AAA rules at issue here, were silent as to the allocation of
arbitrators' fees. Cole, 105 F.3d at 1485. Given that silence,
the court found "the arbitration agreement . . . [to be] valid
and enforceable . . . [and the court] interpret[ed] the
agreement as requiring Burns Security [the defendant/employer] to
pay all of the arbitrator's fees necessary for a full and fair
resolution of Cole's statutory claims." Id.[8]

_____

[7] The court of appeals in Cole also held that "[t]here is no
doubt that parties appearing in federal court may be required to
assume the cost of filing fees and other administrative expenses,
so any reasonable costs of this sort that accompany arbitration
are not problematic," 105 F.3d at 1484 (footnote omitted), and
went on to "assume, for purposes of this case, that employees who
would qualify for in forma pauperis status in the federal courts
will similarly qualify for a waiver of fees under the AAA Rules,"
id. at 1484 n.12.

[8] At page 10 of his Memorandum of Law Supporting Objection
to Defendant's Motion to Compel Arbitration, plaintiff states
that the court in Cole did not enforce the arbitration clause.
That is incorrect. The court found "that the disputed
arbitration agreement is legally valid," id. at 1483, and
enforced it, by ordering arbitration, with the proviso that the
defendant/employer "pay all arbitrators' fees in connection with
the resolution of [plaintiff] Cole's claims," id. at 1486. Thus,

31

Cole, however, is unpersuasive for at least two reasons. First, it appears to be the only decision advocating a per se rule against arbitration clauses in employment agreements that require an employee to pay part of the arbitrator's fee. Second, Cole predates the Supreme Court's decision in Green Tree, which also involved an arbitration clause that said "nothing about the costs of arbitration." Green Tree, 121 S. Ct. at 521. While the Supreme Court could have adopted Cole's approach, it did not, ruling instead that a party seeking to invalidate an arbitration clause bears the burden of proving the likelihood of incurring such costs. Id. at 522. The opinion in Green Tree supports a case-by-case approach rather than the per se rule of Cole. See Bradford, 238 F.3d at 556 (relying upon Green Tree as authority for adopting a case-by-case approach rather than the per se rule of Cole). Accordingly, the court declines to apply a per se rule.

---

if this court were to render a decision in plaintiff's favor, based upon Cole, it would grant defendant's motion, and order arbitration, with the proviso that plaintiff could petition the AAA for a waiver of administrative fees and that defendant pay the arbitrator's fees.

A number of cases, both pre- and post-dating <u>Green Tree</u>, adopt a case-by-case approach in deciding whether the costs of arbitration render an arbitral forum an inadequate substitute for a judicial forum. In <u>Shankle</u>, the Tenth Circuit addressed the question: "Is a mandatory arbitration agreement, which is entered into as a condition of continued employment, and which requires an employee to pay a portion of the arbitrator's fees, unenforceable under the Federal Arbitration Act?" <u>Shankle</u>, 163 F.3d at 1233. Following the rule stated in <u>Cole</u>, the court decided that such an agreement was unenforceable, but because the agreement in <u>Shankle</u>, unlike the one in <u>Cole</u>, was not silent regarding allocation of arbitrator's fees but instead specified that they would be shared equally by the employer and the employee, <u>id.</u> at 1232, the court could not reach the same result as in <u>Cole</u>. Rather than ordering arbitration, with all arbitrator's fees paid by the employer, <u>see</u> <u>Cole</u>, 105 F.3d at 1485, the court in <u>Shankle</u> found the arbitration clause to be unenforceable because it required the employee to pay a part of the arbitrator's costs and fees, and ordered the plaintiff's case to proceed in the district court. Notably, however, the court in <u>Shankle</u> did not decide that the arbitration agreement was

33

unenforceable <u>per se</u>, but instead, based its decision on the following findings:

> Assuming Mr. Shankle's arbitration would have lasted an average length of time, he would have had to pay an arbitrator between $1,875 and $5,000 to resolve his claims. Mr. Shankle could not afford such a fee, and it is unlikely other similarly situated employees could either.

163 F.3d at 1234-35 (footnote omitted).

In <u>Williams</u>, the plaintiff/employee challenged an arbitrator's award which included, <u>inter alia</u>, a requirement that "he pay $3,150 as his one-half share of the forum fees," <u>Williams</u>, 197 F.3d at 763, claiming that such an award was against public policy, <u>id.</u> The arbitration agreement in <u>Williams</u> required the party filing an arbitration claim "to pay a non-refundable filing fee and a hearing session deposit," <u>id.</u> at 764, but left it to the arbitrators to "determine the amount chargeable to the parties as forum fees and [] determine who shall pay such forum fees," <u>id.</u> (citation omitted). The court took issue with <u>Cole</u> and <u>Shankle</u>, opining that "<u>Gilmer</u> does not so clearly imply that no part of arbitral forum fees may ever be assessed against federal anti-discrimination claimants, although

34

it plainly indicates that an arbitral cost allocation scheme may not be used to prevent effective vindication of federal statutory claims." Williams, 197 F.3d at 763 (citing Gilmer, 500 U.S. at 28). Based upon its interpretation of Gilmer, and the plaintiff's failure to prove that he was "unable to pay one-half of the forum fees or that they [were] prohibitively expensive for him," Williams, 197 F.3d at 764, the court affirmed the decision of the district court to uphold the arbitrator's award, id. at 765.

Finally, in a case that post-dates Green Tree, and upon which plaintiff relies, the Fourth Circuit rejected the per se rule of Cole in favor of an inquiry

> that evaluates whether the arbitral forum in a
> particular case is an adequate and accessible
> substitute to litigation, i.e., a case-by-case analysis
> that focuses, among other things, upon the claimant's
> ability to pay the arbitration fees and costs, the
> expected cost differential between arbitration and
> litigation in court, and whether that cost differential
> is so substantial as to deter the bringing of claims.

Bradford, 238 F.3d at 556 (citing Williams, 197 F.3d at 764; Rosenberg, 170 F.3d at 16; Shankle, 163 F.3d at 1235). Furthermore:

Although the Cole court framed its concern with fee-splitting partially in terms of the fact that arbitrators' fees are "unlike anything that [a claimant] would have to pay to pursue his statutory claims in court" because a claimant normally "would be free to pursue his claims in court without having to pay for the services of a judge," Cole, 105 F.3d at 1484-85, we believe that the proper inquiry under Gilmer is not where the money goes but rather the amount of money that ultimately will be paid by the claimant. Indeed, we fail to see how a claimant could be deterred from pursuing his statutory rights in arbitration simply by the fact that his fees would be paid to the arbitrator where the overall cost of arbitration is otherwise equal to or less than the cost of litigation in court.

Bradford, 238 F.3d at 557 (footnote omitted).


In Bradford – unlike this case – the arbitration agreement signed by the employee mandated that the employer and the employee were to "share equally the fees and costs of the Arbitrator," id. at 551, and provided no mechanism by which those fees and costs could be allocated, by the arbitrator or otherwise, in any other way. However, because the plaintiff "offered no evidence that he was unable to pay the $4,470.88 that he was billed by the AAA, or that the fee-splitting provision deterred him from pursuing his statutory claim or would have deterred others similarly situated," id. at 558 (citing Williams,

36

197 F.3d at 764), the court affirmed the district court's grant of summary judgment to the defendant/employer.

As noted above, this court favors the case-by-case approach used in <u>Shankle</u>, <u>Williams</u>, and <u>Bradford</u> as well as the "overall cost" analysis outlined in <u>Bradford</u>. Moreover, on the facts of the case before it, the court does not reach the same decision as the court in <u>Shankle</u>.

In <u>Shankle</u>, the arbitration clause stated, in pertinent part:

> I will be responsible for one-half of the arbitrator's fees, and the company is responsible for the remaining one-half. If I am unable to pay my share, the company will advance the entirety of the arbitrator's fees; however, I will remain liable for my one-half.

<u>Shankle</u>, 163 F.3d at 1232. Here, by contrast, the arbitration clause itself does not specify which party must bear the costs, but refers to the rules of the AAA. And those rules specify that: (1) filing fees are advanced by the party initiating arbitration, subject to apportionment in the award (Def.'s Reply Brief, Ex. B at 15 of 21); (2) administrative fees may be reduced

37

or waived in the case of hardship on any party (id.); and (3) "[t]he arbitrator's compensation shall be borne equally by the parties . . . unless the law provides otherwise," (id. (emphasis added)).

Under the case-by-case approach of Shankle, Williams, and Bradford, and the "overall cost" analysis advocated by Bradford, plaintiff's dispute is subject to the arbitration clause in his employment agreement. Plaintiff may of course submit the question of costs to the arbitrator. See, e.g., Great Western Mort. Corp. v. Peacock, 110 F.3d 222, 230 (3d Cir. 1997) ("Once a dispute is determined to be validly arbitrable, all other issues are to be decided at arbitration.") By the time the arbitrator reaches the costs and fees issues, the record will obviously be far less vague and speculative than it is now. Because the arbitrator is empowered to allocate costs and fees associated with arbitration, and, indeed, is obligated to do so in accordance with the law, and because the federal common law provides that plaintiff cannot be forced to submit to an arbitration process that imposes costs that render the arbitral forum less accessible than a judicial forum, plaintiff bears no

risk by proceeding to arbitration. Plaintiff faces no risk because the arbitrator may not lawfully impose costs and fees upon plaintiff that are in excess of the costs of litigation.[9] In other words, while the "default setting" in the AAA Rules calls for the parties to share the arbitrator's fees equally, applicable law pertinent to arbitrating federal statutory rights comes into play and may provide for a different allocation of costs and fees, which is indeed contemplated by the AAA Rules. Defendant may end up paying the lion's share of the costs and fees associated with arbitration, under the rule of Gilmer, as refined by Bradford. But defendant assumed the risk of doing so by including an arbitration clause in the employment agreement it negotiated with plaintiff.

Finally, the court notes that while administrative costs and arbitrators' fees and expenses may be used to calculate plaintiff's overall costs of arbitration, certain of plaintiff's costs should not be counted. Specifically, transportation costs pertain solely to the location of arbitration in California, but

---

[9] Should plaintiff believe, at the conclusion of arbitration, that costs and fees have been allocated in manifest disregard of the relevant law, he can always move, in federal court, to vacate the award. See 9 U.S.C. ¶ 10.

have nothing to do with the distinction between arbitration and adjudication in court. Plaintiff knew at the time he signed his employment agreement that the defendant was a California corporation and that the arbitration clause specified that arbitration was to take place in California. See Stuart, 85 F.3d at 980 (finding arbitration clause requiring Illinois defendants to travel out of state to arbitrate not to be unconscionable because "[d]efendants were aware, based on the language of the arbitration agreement, that they would have to travel to either Florida or Connecticut if an arbitrable dispute arose") (citing Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 476 (1989)). Accordingly, plaintiff's transportation costs are not a factor in determining the relative costs of arbitration. Similarly, costs associated with plaintiff's pursuit of the HRC/EEOC action, and this suit, are not costs of arbitration; they are costs plaintiff assumed, voluntarily, when he ignored the arbitration agreement. That said, determining plaintiff's costs of arbitration, and comparing them to the costs he would have faced had he litigated under the analytical scheme outlined in Bradford, is a matter properly put before the arbitrator.

## Conclusion

For the reasons given, defendant's motion to compel arbitration and stay the present proceeding (document no. 11) is granted.  If plaintiff wishes to make the claims outlined in his complaint, he must raise them, in the first instance, in arbitration.  He may, subject to the limitations stated above, arbitrate the issue of costs as well.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

November 28, 2001

cc:  Eleanor H. MacLellan, Esq.
     Jill K. Blackmer, Esq.
     Jon W. Tyron, Esq.